IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LAUREN KESTERSON,** | : | |
| | : | |
| Plaintiff, | : | Case No. 5:16-cv-00298 |
| | : | |
| v. | : | JUDGE SARA LIOI |
| | : | |
| **KENT STATE UNIVERSITY,** *et al.*, | : | Magistrate Judge Kathleen Burke |
| | : | |
| **Defendants.** | : | |

---

**DEFENDANT KAREN LINDER'S
MOTION TO DISMISS**

---

Defendant Karen Linder, through the undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) moves this court to dismiss all claims against her because 1) her federal claim fails to state a claim upon which relief can be granted; 2) Linder enjoys qualified immunity from the federal claim; 3) Linder has statutory immunity from Plaintiff's state law claim; and 4) this Court lacks subject matter jurisdiction over the state law claim.  A memorandum in support is attached.

Respectfully submitted,

**MICHAEL DEWINE (0009181)**
**Ohio Attorney General**

*s/ Michael C. McPhillips*
_____
MICHAEL C. MCPHILLIPS (0065329)
*Trial Counsel*
LISA M. CRITSER (0079262)
Assistant Attorneys General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Telephone: (614) 644-7250
Facsimile: (614) 644-7634
michael.mcphillips@ohioattorneygeneral.gov
lisa.critser@ohioattorneygeneral.gov

*Counsel for Defendant Karen Linder*

**MEMORANDUM IN SUPPORT**

**I.**     **Allegations in the Complaint Pertaining to Karen Linder**

For the purposes of this Motion, the following allegations in the Complaint are treated as true. Plaintiff Lauren Kesterson attends Kent State University ("KSU"), a public university. (Complaint, Doc. 1, ¶2-3)[1]. Karen Linder formerly coached the KSU softball team. (¶4). As a Division I coach, Linder exercised control over various aspects of the softball program, including overseeing training and enforcing rules. (¶ 9-11, 12, 15). Linder recruited Kesterson and her twin sister to play softball at KSU, beginning in fall 2012. (¶22).

Linder's son, Tucker (hereinafter "Tucker"), was also a freshman student athlete at KSU in fall 2012 and became friends with Kesterson. (¶23, 25). On December 7, 2012, in the first semester of her freshman year, Kesterson and Tucker had sex, which Kesterson characterizes as

---

[1] All parenthetical citations to ¶ numbers in this Motion refer to the Complaint, Doc. 1.

rape. (¶26, 33).[2] Kesterson continued to play softball through her freshman and sophomore years at KSU. (¶49). In a team meeting in spring 2014, Kesterson became emotional and "thanked everyone for helping her deal with her issues." (¶51). Afterwards, Coach Linder asked Kesterson's twin sister and another teammate whether Plaintiff had been sexually assaulted; they responded that Linder would need to ask Plaintiff. (¶52). At Linder's spring 2014 semester exit meeting with Kesterson ("exit meeting"), Kesterson acknowledged she had been raped by Tucker, causing Linder to cry. (¶54-56, 61)

Linder commented that her son might not have known he raped Kesterson and asked her if she would like to talk with Tucker about the situation; Kesterson declined (¶62-63). Kesterson also said she did not want to file criminal charges. (¶64). Upon learning that only Kesterson's parents and sister and another teammate knew about the situation, Linder said, "I would appreciate if you would not tell anybody else and that we keep this between the people that know." (¶65). Linder confided to Kesterson that Tucker was struggling, had been arrested on St. Patrick's Day and was considering not returning to KSU. (¶67). Linder said she loved Kesterson and would do whatever she could to help her. (¶68). The day after the exit meeting, Linder called Kesterson's mother and apologized to her. (¶71). That summer, Linder notified Kesterson that Tucker would not be returning to KSU. (¶73).

Linder did not report Kesterson's allegations to KSU's Title IX Coordinator as university policy requires. (¶76). She did not provide copies of KSU policies to Kesterson or inform her of services to sexual abuse victims. (¶77-78). A few days before the exit meeting, a different female softball player[3] informed Linder she had been raped by a KSU athlete.

---

[2] Plaintiff liberally uses the term rape throughout the Complaint. However, the Complaint is devoid of allegations that Tucker was criminally convicted of rape, arrested for rape or even found by a preponderance of the evidence to have engaged in nonconsensual sex with Plaintiff under an internal Title IX proceeding.

[3] Plaintiff does not include in her Complaint the fact that the other complaining player was a female. But Linder asks the Court to take judicial notice that KSU only has a women's softball team. See Kent State University, http://www.kentstatesports.com/, including softball among women's sports but not among men's sports (last visited

(¶80). Linder responded by taking the athlete to a campus support services office and reporting the matter to a deputy Title IX coordinator. (¶82).

In fall 2014, Kesterson's junior year, Linder hosted team meetings and a holiday event at her home, where Tucker lived and photographs of him were on the walls. (¶85). Linder also kept photos of her son in her office. (¶87). From Kesterson's viewpoint, Linder treated her with extreme indifference during the 2014-15 year. (¶89). Coach Linder also moved Kesterson from playing shortstop, her preferred position, to second base. (¶90). On one occasion, Linder complained about a player getting emotional during practice and Kesterson believed the coach was referring to her. (¶91).

In fall 2015 – nearly three years after the alleged assault – Kesterson filed a complaint about it and about Coach Linder's failure to properly address it with a KSU deputy Title IX Coordinator. (¶101). Coach Linder was interviewed about the complaint by the deputy coordinator and KSU Athletic Director on August 26, 2015. (¶110). On August 28, 2015, Kesterson was informed that Linder resigned as coach. (¶112-115). Linder notified the team by group text message that it was not her choice to leave. (¶116). Linder also telephoned some members of the team, but not Kesterson or her sister. (¶117). In a media interview, Linder was quoted discussing the difficulties of coaching, and Kesterson interpreted this as a parting shot at her. (¶118-119). Linder also complained to alumni and others about the unnamed "athlete" who made her resign. (¶120). Kesterson believes Linder mentioned to alumni that "the twins" caused her to resign. (¶121).

Kesterson alleges Linder attended all KSU softball games during the fall 2015 season, was present in the locker room, and participated in team activities. (¶143). She further alleges Linder attended a luncheon with current and former softball players during alumni weekend.

April 21, 2016).

4

(¶144).

In Claim 2, Kesterson alleges that Linder is liable under 42 U.S.C. § 1983 for depriving her of Equal Protection of the laws guaranteed by the Fourteenth Amendment. (¶221-231). Specifically, she alleges Linder "acted with gender-based discriminatory intent in failing to properly respond to Tucker's attack" and retaliating against Kesterson for her protected activity. (¶226, 228).  In Claim 3, Kesterson brings a state law claim of intentional infliction of emotional distress against Linder. (¶232-238).

**II.      Standard of Review**

A District Court may dismiss a lawsuit for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). In ruling on the motion, the Court must "construe the complaint in the light most favorable to the plaintiff and accept the plaintiff's allegations as true." *Afridi v. National City Bank,* 509 F. Supp. 2d 655, 659-660 (N.D. Ohio 2007) (internal quotations and citations omitted).  A complaint will survive a motion to dismiss if it contains direct or inferential allegations of all material elements necessary for recovery under a viable legal theory, but the court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.,* 732 F.3d 645, 649 (6th Cir. 2013) (internal quotations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.,* 683 F.3d 239, 246–47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "Rather, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 247 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). The plausibility standard was discussed in *McKinney v. Bayer Corp.*, 744 F. Supp.

5

2d 733, 740-741 (N.D. Ohio 2010):

> The plausibility requirement is not the same as a probability requirement but instead asks for more than a sheer possibility that a defendant has acted unlawfully. Therefore, where a complaint pleads facts that are merely consistent with the defendant's liability, its stops short of the line between possibility and plausibility of entitlement to relief. Examining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

(internal citations and quotations omitted). Notice pleading principles do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 662.

When ruling on a Rule 12(b)(1) motion to dismiss, the Court may consider along with the Complaint 1) documents attached to, incorporated by, or referred to in the pleadings, 2) documents referred to in the complaint and central to the plaintiff's allegations, 3) public records, and 4) matters for which the Court may take judicial notice. *Whittiker v. Deutsche Bank Nat'l Trust Co.,* 605 F. Supp. 2d 914, 924-25 (N.D. Ohio 2009).

A Court may dismiss a Complaint for lack of subject matter jurisdiction at any stage of the litigation. Fed. R. Civ. P. 12(b)(1), 12(h)(3). Where, as here, a party makes a facial attack on subject matter jurisdiction, the material allegations in the complaint are taken as true and construed in a light most favorable to the nonmoving party. *Smith v. Bd. of Trustees Lakeland Comm. College,* 746 F. Supp. 2d 877, 888 (N.D. Ohio 2010). When subject matter jurisdiction is challenged, the plaintiff bears the burden of proving jurisdiction. *Id.*

### III.    Argument

####    A.    Plaintiff fails to state a plausible claim of an equal protection deprivation under 42 U.S.C. § 1983.

In Claim Two of her Complaint, Kesterson alleges a Section 1983 claim of denial of equal protection under the Fourteenth Amendment against Linder in her individual capacity. The

Equal Protection Clause prohibits states from denying "any person within its jurisdiction the equal protection of the laws." US. Const. amend XIV, § 1. To state a claim under § 1983, Kesterson must establish that a person acting under color of state law deprived her of a federal right. *Soper v. Hoben*, 195 F.3d 845, 852 (6th Cir. 1999). The Sixth Circuit recognizes two types of equal protection violations in the educational setting: (1) disparate treatment based on gender or other membership in a recognized class, and (2) in elementary and secondary education, when *teachers* or *administrators* are aware of a student's severe, pervasive race or sex-based mistreatment, but fail to take action to prevent or stop the abuse. *Stiles ex rel. D.S. v. Grainger County, Tenn.*, ____ F.3d ____, No. 15-5438, 2016 WL 1169099, *12 (6th Cir. Mar. 25, 2016). In other words, Kesterson must show Linder intentionally discriminated or acted with deliberate indifference. *Id.*

The first type of equal protection violation requires Kesterson to prove her complaint of an alleged assault was treated differently by Linder than similar complaints made to Linder by Kesterson's male counterparts. *Soper,* 195 F.3d at 852. There are no allegations in the Complaint from which it can be reasonably inferred that Linder treated men and women differently. Kesterson's only allegation about Linder's response to a student's report of sexual assault involved another *female* student's report. (¶80). In a Section 1983 equal protection claim, the crucial issue is not whether a state actor's conduct met a court's general idea of fairness, but whether the state actor treated another person adversely on the basis of her membership in a particular class. *Adams v. Tennessee Dep't of Fin. and Admin.*, 179 Fed. Appx. 266, 272 (6th Cir. 2006) (internal citations and quotations omitted). The Complaint lacks any allegations that Linder treated Kesterson adversely based on her membership in any recognized class.

7

Assuming the second type of equal protection violation is actionable in higher education,[4] it requires Kesterson to show that Linder acted with deliberate indifference to her constitutionally protected rights. *Stiles ex rel. D.S,* 2016 WL 1169099 at *12.  Deliberate indifference is a "stringent standard of fault," which requires proof that a state actor "disregarded a known or obvious consequence of his action." *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 410 (1997).  The deliberate indifference standard used for proving a Section 1983 equal protection violation is "substantially the same" as the deliberate indifference standard applied in Title IX and Eighth Amendment claims. *Williams ex rel. Hart v. Paint Valley Local School Dist.*, 400 F.3d 360, 369 (6th Cir. 2005) (internal citations omitted).  A plaintiff may demonstrate deliberate indifference by showing a school official responded to discriminatory peer harassment in a manner clearly unreasonable in light of known circumstances. *Stiles ex rel. D.S.*, 2016 WL 1169099 at *12. (internal citations omitted).

Here, Kesterson makes no allegations from which it can be reasonably inferred that Linder was deliberately indifferent. When Linder recognized that Kesterson was upset during a team meeting at the end of the spring 2014 semester, Linder immediately made an effort to find out why Kesterson was upset by asking Kesterson's twin sister and another teammate. (¶51-52). During her spring 2014 semester exit meeting with Kesterson, Linder asked Kesterson directly if there was anything Kesterson wanted to discuss in an effort to find out why Kesterson was upset. (¶55).  When told that her son, Tucker, sexually assaulted Kesterson, Linder demonstrated empathy toward Kesterson.  Linder told Kesterson that she was "[Linder's] kid, too" and

---

[4] There are numerous § 1983 case precedents addressing whether teachers and administrators in kindergarten-through-12[th] grade school settings were deliberately indifferent toward harassment and/or bullying of elementary and secondary students by fellow students.  *Vance v. Spencer Cty. Public Sch. Dist.*, 231 F.3d 253 (6th Cir. 2000); *Massey v. Akron City Bd. of Educ.,* 82 F. Supp. 2d 735 (N.D. Ohio 2000); *Hart v. Paint Valley Local Sch. Dist.*, No. C:2-01-004, 2002 WL 31951264 (S.D. Ohio 2002); The undersigned have not located any controlling authority in which the Equal Protection Clause's deliberate indifference standard has been applied to a college or university employee being sued in her individual capacity under § 1983 in connection with student-on-student misconduct.

apologized to Kesterson (¶60-61). Linder asked Kesterson if she would like to talk to Tucker about the situation, commenting that Tucker might not have known he raped Kesterson. (¶62-63). Linder also asked Kesterson if she wanted to press criminal charges against Tucker. (¶64). Linder confided to Kesterson that Tucker was struggling, had been arrested on St. Patrick's Day and was considering not returning to KSU. (¶67).  Linder said she loved Kesterson and would do whatever she could to help Kesterson. (¶68). The day after the exit meeting, Linder called Kesterson's mother, apologized to her, and offered to do anything she could to help. (¶71). That summer, Linder notified Kesterson that Tucker would not be returning to KSU. (¶73).

In light of the circumstances, nothing about Linder's response suggests that it was clearly unreasonable and thus, deliberately indifferent.  Linder noticed Kesterson was upset, asked why Kesterson was upset and, when told the reason, tried to help Kesterson resolve the problem.  The only thing Linder did not do was follow KSU policy and report Kesterson's allegation of sexual assault to KSU's Title IX coordinator.  (¶ 76).  At best, Kesterson's allegations show Linder was negligent in failing to report Kesterson's allegation of sexual assault to KSU's Title IX coordinator as required by KSU policy. However, a plaintiff must show more than mere negligence to establish deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835 (1990). Deliberate indifference describes a state more blameworthy than negligence. *Id*.; *see also Doe on Behalf of Doe v. Dallas Independent School Dist.*, 153 F.3d 211, 219 (5th Cir. 1988)("[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference").

In addition, according to the Complaint, Linder did not become aware of Tucker's conduct toward Kesterson until the conduct had ceased and there remained no ongoing threat to her.  Kesterson alleges one incident of nonconsensual sex in the fall of 2012, which she reported

9

to Linder at the end of the spring 2014 semester. There is no allegation and it cannot be reasonably inferred from the Complaint that Tucker assaulted, harassed or otherwise acted inappropriately toward Kesterson in the intervening 18 months. Moreover, there is no allegation that Kesterson suggested she was at risk of harm from Tucker, nor are there allegations that, aside from a rude remark at a party in fall 2013, Tucker ever did anything to bother Kesterson again. (¶43). The only contact between Kesterson and Tucker following Kesterson's report to Linder is one text message in which Tucker stated that he was thinking of transferring, that he hoped Kesterson could stay at KSU, and that he understood if Kesterson needed to ignore, hate and forget him to cope. (¶72).

As noted in *Davids v. Carmel Clay Schools,* 570 F. App'x 602 (7th Cir. 2014), a claim does not lie under § 1983 for deliberate indifference when the misconduct is reported after it has already ceased. Certainly, had Kesterson told Linder in May 2014 that Tucker was continuing to harass, abuse, or assault her and Linder did nothing to address it, a claim might lie for disregarding "a known or obvious consequence" of her action. *Brown, supra.* There is nothing, however, to suggest that Linder knew that her efforts to remediate the situation would not be effective. Or, put another way, Kesterson did not plausibly plead she was at risk of an Equal Protection violation when her allegations came to Linder's attention. *Cf. Farmer v. Brennan, supra* (in prison setting, deliberate indifference requires proof defendant was informed of facts prisoner was at risk and actually inferred he was at risk, but failed to take reasonable steps to alleviate risk).

Lastly, to the extent that Kesterson is alleging Linder violated the Equal Protection Clause by retaliating against her for protected activity, her claim fails. The Sixth Circuit has long held and recently reiterated that a "retaliation claim does not . . . arise under the Equal

10

Protection Clause." *Smith v. City of Inkster*, No. 15-1585, 2016 WL 1169092 (6th Cir. March 25, 2016) (citing *R.S.W.W., Inc. v. City of Keego Harbor,* 395 F.3d 427, 440 (6th Cir. 2005)); *see also Strouss v. Michigan Dep't of Corrections,* 75 F. Supp. 2d 711, 734 (E.D. Mich. 1999)("a pure or generic retaliation claim simply does not implicate the Equal Protection Clause"); *Ratliff v. DeKalb County,* 62 F.3d 338, 341 (11th Cir. 1995) ("no clearly established right exists under the equal protection clause to be free from retaliation").

Because Kesterson has failed to state a plausible claim of an equal protection deprivation, her claim under 42 U.S.C. § 1983 should be dismissed.

### B. Qualified immunity protects Linder from Plaintiff's § 1983 claim.

Linder also is entitled to qualified immunity on Kesterson's Equal Protection claim. Qualified immunity shields officials from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 457 U.S. 335, 341, (1986). Qualified immunity is not a mere defense to liability, but constitutes immunity from suit and an entitlement not to stand trial. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (abrogated on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)).

There are two general steps to the qualified immunity analysis: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The Court can address these two questions in whichever

11

order it chooses.  *Id*. at 236.

Whether law is clearly established is normally determined with reference to the published decisions of the Supreme Court, the Sixth Circuit, or perhaps, the district court in the district where the conduct occurred.  *Ohio Civil Service Employees Ass'n v. Seiter*, 858 F.2d 1171 (6th Cir. 1988); *see also Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002).  "Although decisions of other courts can clearly establish the law, such decisions must both point unmistakably to the unconstitutionality of the conduct and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional."  *Mumford v. Zieba*, 4 F.3d 429, 432-33 (6th Cir. 1993).  It is only the extraordinary case that will require a reviewing court to look beyond the Supreme Court and Sixth Circuit decisions. *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993).

The fundamental inquiry is whether public officials are "on notice their conduct is unlawful."  *Hope v. Pelzer* 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).  "[I]n light of pre-existing law, the unlawfulness must be apparent."  *Id*.  Pre-existing law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like situated, reasonable government agent that what defendant is doing violates federal law in the circumstances."  *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997).

Linder is entitled to qualified immunity because Kesterson has not sufficiently alleged a violation of a constitutional right. As discussed, Kesterson does not allege Linder treated her differently than other similarly situated males and Kesterson's allegations do not establish Linder was deliberately indifferent. Therefore, Kesterson fails to sufficiently allege an equal protection violation under § 1983.

Additionally, even if Kesterson's Complaint sufficiently alleged a constitutional violation, Kesterson could not prove that the constitutional right was clearly established. Kesterson makes the broad allegation, "[t]he right to be free from gender-based discrimination has been clearly established for decades" (¶229), which is true. However, qualified immunity analysis is undertaken not as a broad proposition, but in the specific context of the case. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The narrowness of the "clearly established" inquiry was reiterated by a unanimous Supreme Court in *Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014):

> [A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. . . . [E]xisting precedent must have placed the statutory or constitutional question confronted by the official beyond debate. In addition, we have repeatedly told courts ... not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.

134 S. Ct. at 2023 (internal quotations and citations omitted). A plaintiff bears the burden of showing a defendant is not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005). To prove a defendant is not entitled to qualified immunity, a plaintiff must point to "either 'controlling authority' or 'a robust consensus of cases of persuasive authority'" establishing the existence of the specific right at issue. *Hidden Village LLC v. City of Lakewood,* 734 F.3d 519, 529 (6th Cir. 2013).

The undersigned have not found any decisions issued by the Supreme Court, the Sixth Circuit and this Court that clearly establish a way in which a college or university athletic coach violates the Equal Protection clause based on his or her response to an athlete's report of sexual assault. Specifically, Kesterson cannot point to any controlling authority that the failure to follow a university's Title IX reporting policy constitutes an equal protection deprivation; that

13

encouraging an athlete to resolve an alleged sexual assault informally constitutes an equal protection deprivation; or that retaliating against an athlete for complaining of sexual assault constitutes an equal protection deprivation.

### C. Plaintiff's state law claim is barred by statutory immunity and lack of subject matter jurisdiction.

In Claim Three of her Complaint, Kesterson alleges a claim of intentional infliction of emotional distress against Linder in her individual capacity. Intentional infliction of emotional distress is a civil claim under Ohio law. Therefore, Linder enjoys immunity from such a claim pursuant to Ohio Revised Code 9.86.

KSU is a public university and part of the university system of Ohio. Ohio Rev. Code § 3361.01 *et seq.* Accordingly, KSU's employees, including Linder, enjoy immunity under Ohio Rev. Code § 9.86, which provides:

> Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Under this provision, immunity applies to KSU employees who were simply performing their job duties.

Linder anticipates that Kesterson will argue that discovery would help her determine whether Linder acted outside the scope of her employment or with malice, in bad faith, wantonly or recklessly. However, such an argument would be unavailing. Ohio Rev. Code § 2743.02(F) answers the question of who has sole authority to make the determination of whether a state employee's § 9.86 immunity is lost – the Court of Claims:

14

> A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action. The officer or employee may participate in the immunity determination proceeding before the court of claims to determine whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code. (Emphasis added).

*See also Li v. Jiang,* 38 F. Supp. 2d 870, 878-879 (N.D. Ohio 2014); *Johns v. University of Cincinnati Med. Associates, Inc*., 101 Ohio St.3d 234, 2004-Ohio-824, 804 N.E.2d 19, syllabus ("Pursuant to R.C. 2743.02(F), the Court of Claims has exclusive jurisdiction to determine whether a state employee is immune from liability under R.C. 9.86.") Therefore, the determination of whether Linder falls within the narrow exceptions to immunity should be made by a judge in the Ohio Court of Claims.

**IV.　Conclusion**

For the above reasons, Defendant Karen Linder respectfully requests that the Court dismiss Plaintiff Lauren Kesterson's claims against her in their entirety.

15

        Respectfully submitted,

        **MICHAEL DEWINE (0009181)**
        **Ohio Attorney General**

        *s/ Michael C. McPhillips*
        _____
        MICHAEL C. MCPHILLIPS (0065329)
        *Trial Counsel*
        LISA M. CRITSER (0079262)
        Assistant Attorneys General, Education Section
        30 East Broad Street, 16th Floor
        Columbus, Ohio 43215
        Telephone:  (614) 644-7250
        Facsimile:   (614) 644-7634
        michael.mcphillips@ohioattorneygeneral.gov
        lisa.critser@ohioattorneygeneral.gov
        *Counsel for Defendant Karen Linder*

## CERTIFICATE OF COMPLIANCE WITH LR 7.1(f)

Michael C. McPhillips, Assistant Attorney General, as trial counsel for Defendants, hereby certifies in compliance with Loc. R. 7.1(f) that this case has not been assigned to a track, and that the preceding memorandum is not in excess of 20 pages in length.

        *s/ Michael C. McPhillips*
        _____
        MICHAEL C. MCPHILLIPS (0065329)
        Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on April 22, 2016.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's systems.

        *s/ Michael C. McPhillips*
        _____
        MICHAEL C. MCPHILLIPS (0065329)
        Assistant Attorney General