IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LAUREN KESTERSON<br><br>          Plaintiff,<br><br>vs.<br><br>KENT STATE UNIVERSITY, *et al.*<br><br>          Defendants. | Case No. 5:16-cv-00298<br><br>Judge Sara Lioi<br><br>Magistrate Judge Kathleen B. Burke |
| **PLAINTIFF'S RESPONSE TO DEFENDANT OAKLEY'S MOTION TO DISMISS THE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT** | |

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

I.      Issues presented........................................................................................ 1

        1.      The Eleventh Amendment provides immunity for state officials in their
                official capacities only with respect to retroactive relief. Kesterson's § 1983
                official-capacity claims against Oakley seek only prospective injunctive
                and declaratory relief. Does Oakley have immunity under the Eleventh
                Amendment?........................................................................................... 1

        2.      A plaintiff can recover for First Amendment retaliation if she can show
                that she engaged in protected conduct and suffered an adverse action that
                was motivated by that conduct. Kesterson alleges that Oakley retaliated
                against her within two days of her reporting Linder's cover up of
                Kesterson's rape report. Has Kesterson adequately alleged a First
                Amendment retaliation claim?................................................................... 1

        3.      A student plaintiff can recover for First Amendment prior restraint where
                a public official forbids her from speaking about a matter of community
                concern. Kesterson alleges that Oakley told Kesterson that he would
                immediately remove her from the team if she spoke poorly of the former
                coach who suppressed Kesterson's rape report. Has she adequately alleged
                a prior restraint? ...................................................................................... 1

        4.      Qualified immunity shields state actors whose discretionary acts do not
                violate clearly established law of which a reasonable official would know.
                Kesterson alleges that Oakley mistreated Kesterson after learning that she
                filed a Title IX complaint about being raped that led to Linder's
                resignation. Would a reasonable public official have understood that
                retaliating against a rape victim by silencing her violated
                the Constitution? ...................................................................................... 1

II.     Introduction............................................................................................... 1

III.    Standard of review ..................................................................................... 2

IV.     Law & argument........................................................................................ 3

        A.      Defendant Oakley, in his official capacity, is not entitled to Eleventh
                Amendment sovereign immunity on Kesterson's official-capacity § 1983
                claims. ..................................................................................................... 3

                1.      Sovereign immunity offers no protection to state officials sued in
                        their official capacity against claims seeking prospective injunctive
                        and declaratory relief.......................................................................... 3

2.  Kesterson seeks prospective relief against Oakley............................4

B.  The Court should not dismiss Kesterson's official-capacity equal-protection claim against Oakley because he now stands in Linder's shoes and can correct her unconstitutional conduct .............................................7

C.  Kesterson states a claim for First Amendment retaliation based on Oakley's hostility toward Kesterson for reporting Linder ...........................8

1.  Kesterson engaged in constitutionally protected conduct by reporting the rape to Linder and the cover up to EOAA ..................9

2.  Kesterson alleges adverse actions in close temporal proximity to her complaint against Linder ................................................................11

3.  Kesterson adequately alleges that her protected conduct motivated the retaliation ................................................................................ 12

D.  Kesterson states a claim for unlawful prior restraint based on Oakley mandating that Kesterson not speak out about Linder .............................. 13

E.  Oakley is not entitled to qualified immunity .............................................. 15

V.  Conclusion ........................................................................................................ 17

Certificate of Service ............................................................................................ 18

TABLE OF AUTHORITIES

### Cases

*ACLU of Ky. v. McCreary Cnty.,* 608 F.3d 439 (6th Cir. 2010).........................................6

*Alkire v. Irving,* 330 F.3d 802 (6th Cir. 2003)....................................................................7

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................................. 15

*Bailey v. Ohio State Univ.,* 487 F. Supp. 601 (S.D. Ohio 1980) ....................................3, 4

*Banas v. Dempsey,* 742 F.2d 277 (6th Cir. 1984) .............................................................6

*Bates v. City of Little Rock,* 361 U.S. 516 (1960)............................................................ 14

*Baynes v. Cleland,* 799 F.3d 600 (6th Cir. 2015)............................................................ 17

*Benison v. Ross*, 765 F.3d 649 (6th Cir. 2014)...................................................................13

*Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010)...........................................................16

*Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002) .............................................................16

*Brown v. Strickland,* No 2:10-CV-166, 2010 U.S. Dist. LEXIS 63878
(S.D. Ohio June 28, 2010) .......................................................................................................6

*Citizens United v. FEC*, 558 U.S. 310 (2010) ....................................................................13

*Connick v. Myers*, 461 U.S. 138 (1983) .........................................................................10, 11

*Crawford-El v. Britton,* 523 U.S. 574 (1998)....................................................................16

*Dotson v. Collins,* 317 F. App'x 439 (6th Cir. 2008) .........................................................8

*Ex parte Young*, 209 U.S. 123 (1908)...................................................................................4

*Forsyth Cnty., Ga. v. Nationalist Movement,* 505 U.S. 123 (1992) ...............................13

*Green v. Mansour,* 474 U.S. 64 (1985)................................................................................6

*Gunaserka v. Irwin,* 551 F.3d 461 (6th Cir. 2009) ............................................................2

*Haji v. Columbus City Schools,* 621 F. App'x 309 (6th Cir. 2015)....................................13

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ......................................................................15

*Healy v. James*, 408 U.S. 169 (1972) .................................................................................13

*Hogan v. Jacobson*, 823 F.3d 872 (6th Cir. 2016)..............................................................2

*Hope v. Pelszer,* 536 U.S. 730 (2002) ...............................................................................17

*Lucas v. Monroe County*, 203 F.3d 964 (6th Cir. 2000)................................................9, 10

*McCormick v. Miami Univ.,* 693 F.3d 654 (6th Cir. 2012) ...............................................4

*Michael M. v. Superior Ct.*, 450 U.S. 464 (1981) ...............................................................8

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008)......................................13

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) ............................................14

*Paige v. Coyner*, 614 F.3d 273 (6th Cir. 2010)..................................................................13

*Patarek v. Village of Armada*, 801 F.3d 630 (6th Cir. 2015) ...................................... 9, 15

*Perry v. Sindermann,* 408 U.S. 593 (1972) ....................................................... 16

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) ................................................. 10

*Quern v. Jordan,* 440 U.S. 332 (1979) .............................................................. 4

*Quigley v. Tuong Vinh Thai*, 707 F.3d 675 (6th Cir. 2013) ............................... 17

*Rodgers v. Banks*, 344 F.3d 587 (6th Cir. 2003) ................................................. 3

*S&M Brands, Inc. v. Cooper,* 527 F.3d 500 (6th Cir. 2008) ........................ 3, 4, 8

*Saucier v. Katz*, 533 U.S. 194 (2001) ............................................................... 15

*Shaw v. Delta Air Lines,* 463 U.S. 85 (1983) .................................................... 4

*Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 F. App'x 348 (6th Cir. 2014) ............. 15

*Stringfield v. Graham,* 212 F. App'x 530 (6th Cir. 2007) .................................... 4

*Thomson v. Ohio State Univ.*, No. 98-3613, 2000 U.S. App. LEXIS 29206
(6th Cir. Nov. 8, 2000) .................................................................................... 4

*Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623 (6th Cir. 2013) ..................... 12

*Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452
(6th Cir. 2009) ............................................................................................. 3, 7

*Wenk v. O'Reilly,* 783 F.3d 585 (6th Cir. 2015) ................................................ 16

*Whitney v. City of Milan,* 677 F.3d 292 (6th Cir. 2012) ............................... 14, 16

*Williams v. Commonwealth of Kentucky,* 24 F.3d 1526 (6th Cir. 1994) ............ 4

### *Ohio Statutes*

Ohio Rev. Code §§ 2907.01 .......................................................................... 9

### *Federal Statutes*

42 U.S.C.§ 1983 .............................................................................. *passim*

## *Federal Rules*

Fed. R. Civ. P. 25(d) ...................................................................................................8

## *Constitutional Provisions*

U.S. CONST. AMEND. XI .............................................................................................3

## *Other Authorities*

Kent State Student Conduct Code § 4.A.11 ........................................................9

Kent State University Policy Register 5-16.2 ....................................................9

NCAA, *NCAA Division I Manual 2016-17* ........................................................5

NCAA Executive Committee Statement on Sexual Violence Prevention and Complaint Resolution, *Addressing Sexual Assault and Interpersonal Violence: Athletics' Role in Support of Healthy and Safe Campuses* ........................................................10

U.S. Department of Education, Office for Civil Rights, Dear Colleague Letter (4/4/11) 34 C.F.R. § 106.3(c)(1)–(2) .......................................................................9

## I.    Issues presented

1.    The Eleventh Amendment provides immunity for state officials in their official capacities only with respect to retroactive relief. Kesterson's § 1983 official-capacity claims against Oakley seek only prospective injunctive and declaratory relief. Does Oakley have immunity under the Eleventh Amendment?

2.    A plaintiff can recover for First Amendment retaliation if she can show that she engaged in protected conduct and suffered an adverse action that was motivated by that conduct. Kesterson alleges that Oakley retaliated against her within two days of her reporting Linder's cover up of Kesterson's rape report. Has Kesterson adequately alleged a First Amendment retaliation claim?

3.    A student plaintiff can recover for First Amendment prior restraint where a public official forbids her from speaking about a matter of community concern. Kesterson alleges that Oakley told Kesterson that he would immediately remove her from the team if she spoke poorly of the former coach who suppressed Kesterson's rape report. Has she adequately alleged a prior restraint?

4.    Qualified immunity shields state actors whose discretionary acts do not violate clearly established law of which a reasonable official would know. Kesterson alleges that Oakley mistreated Kesterson after learning that she filed a Title IX complaint about being raped that led to Linder's resignation. Would a reasonable public official have understood that retaliating against a rape victim by silencing her violated the Constitution?

## II.    Introduction

Plaintiff Lauren Kesterson's amended complaint asserts three claims against the interim head coach of Kent State's varsity softball team, Defendant Eric Oakley, under 42 U.S.C. § 1983: (1) an equal-protection claim based on the deliberately indifferent response to Kesterson's report to the Title IX office that she had been raped by a Kent State baseball player and that the former head softball coach, Karen Linder, had covered up the rape report; (2) First Amendment prior restraint for mandating Kesterson's silence if she wanted to continue playing softball; and (3) First Amendment retaliation for cultivating team hostility against Kesterson in response to her reporting the rape and Linder's cover up and retaliation.

Oakley asks the Court to dismiss these claims,[1] arguing that Kesterson cannot state claims and that he is entitled to immunity. But, as explained below, Kesterson does state claims for each cause of action, and the law was well established at the time of the alleged events: any reasonable public official should have known that leveraging his coaching authority over a rape victim to keep her silent would create liability.

## III.    Standard of review

"A claim survives a motion to dismiss if its factual allegations are enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."[2] On a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw all reasonable inferences in favor of the plaintiff."[3] Contrary to what Oakley implies throughout his argument, the plaintiff need not plead (or prove) specific facts but rather must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[4] The *Twombly-Iqbal* pleading standard is not a demanding one.[5]

---

[1] Oakley also asks the Court to dismiss a Title IX claim against him. But because Kesterson did not plead a Title IX claim against him, there is nothing to dismiss. Kesterson specified in her Title IX claim that it was brought "against Kent State University." KSU is, of course, liable under Title IX for the sex-discriminatory acts and omissions of its agents, including Linder, Oakley, Jessica Toocheck, and Joel Nielsen, so their names appear in the related allegations.

[2] *Hogan v. Jacobson*, 823 F.3d 872 (6th Cir. 2016) (quotation and brackets omitted).

[3] *Id*. (quotation omitted). Despite being under an obligation to accept all of Kesterson's allegations as true, Oakley repeatedly refers to Kesterson's rape as a "sexual encounter." *See* Doc. 31 at 432, 434. But Kesterson did not report a "sexual encounter" with Tucker Linder. She reported a rape. If he had stolen her wallet, she would not have been reporting a "financial transaction." Kesterson reported a violent crime—a gender-based crime—and the defendants continue to retaliate against her by suggesting otherwise, even when the law requires them to accept her allegations as true.

[4] *Gunaserka v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citation omitted).

## IV. Law & argument

### A. Defendant Oakley, in his official capacity, is not entitled to Eleventh Amendment sovereign immunity on Kesterson's official-capacity § 1983 claims.

In her amended complaint, Kesterson asserts three claims under 42 U.S.C. § 1983 against Oakley. Each of those claims specify that they are brought against Oakley "in his official capacity for declaratory and prospective injunctive relief."[6] This was not done by accident. Recognizing the breadth of Eleventh Amendment protection, Kesterson asserts only claims to which Eleventh Amendment immunity does not apply.

### 1. Sovereign immunity offers no protection to state officials sued in their official capacity against claims seeking prospective injunctive and declaratory relief.

The Eleventh Amendment provides sovereign immunity to states and to entities that can be considered "arms of the state."[7] Subject to certain exceptions, this immunity protects states from suits brought against them in federal court.[8] Oakley correctly points out that Kent State University is a state institution that receives Eleventh Amendment protection. But the point serves only to distract: Kesterson names Oakley—not the university—as a defendant to her § 1983 claims.[9]

---

[5] *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2009) ("Often, defendants' conduct has several plausible explanations. Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage.").

[6] Am. Compl., Doc. No. 20 at 202 (¶ 5), 243, 245, 246.

[7] *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003); U.S. CONST. AMEND XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").

[8] *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).

[9] *Bailey v. Ohio State Univ.*, 487 F. Supp. 601, 603 (S.D. Ohio 1980) ([U]niversity officials named as defendants are plainly not 'the state,' and they may be sued under § 1983 . . . .").

Oakley's tries to extend sovereign immunity to himself in his official capacity even though firmly established case law holds that he cannot. The Supreme Court and the Sixth Circuit have repeatedly recognized that the Eleventh Amendment does not bar suits against state officials in their official capacities for prospective injunctive and declaratory relief. The Supreme Court first established this exception in *Ex parte Young* in 1908,[10] and it has been recognized ever since.[11] Even cases that Oakley cites recognize this exception.[12] (Two of the cases apply the exception as well.[13])

Adding to the weight of authority, and of particular relevance to claims at issue here, the Sixth Circuit has held that "[t]he Eleventh Amendment does not bar § 1983 actions brought against state officials in their official capacities seeking prospective injunctive relief."[14]

### 2. Kesterson seeks prospective relief against Oakley.

Kesterson's official-capacity claims under 42 U.S.C. § 1983 fit within the *Ex parte Young* immunity exception for claims seeking prospective injunctive and declaratory relief. Attempting to argue otherwise, Oakley mischaracterizes the amended complaint

---

[10] 209 U.S. 123 (1908).

[11] *Quern v. Jordan,* 440 U.S. 332, 337 (1979); *S&M Brands, Inc.,* 527 F.3d at 507 ("[A] federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law . . . ."); *Stringfield v. Graham,* 212 F. App'x 530, 535 (6th Cir. 2007) (reversing district court's dismissal of plaintiff's claims for prospective injunctive relief against dean of a state nursing school); *Shaw v. Delta Air Lines,* 463 U.S. 85, 96 n.14 (1983) ("It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.").

[12] Def. Oakley's Mot. to Dismiss, Doc. No. 31 at 438–39; *see McCormick v. Miami Univ.,* 693 F.3d 654, 662 (6th Cir. 2012); *Thomson v. Ohio State Univ. Hosp.,* No. 98-3613, 2000 U.S. App. LEXIS 29206, at *6 (6th Cir. Nov. 8, 2000); *Bailey v. Ohio State Univ.,* 487 F. Supp. at 602–603.

[13] *See McCormick,* 693 F.3d at 662; *Bailey,* 487 F. Supp. at 603–04.

[14] *Stringfield,* 212 F. App'x at 535 (quoting *Williams v. Commonwealth of Kentucky,* 24 F.3d 1526, 1544 (6th Cir. 1994)).

as targeting only past conduct.[15] While the amended complaint details a long track record of past misconduct, it also includes allegations that raise the specter of future injuries. These allegations—which go beyond vague, conclusory assertions—include Oakley firmly aligning himself with Linder and forbidding Kesterson from saying anything negative about the old coach,[16] permitting team hostility to develop against Kesterson during the ensuing cover up and taking no corrective measures to remediate it,[17] and—through his abuse of power as the head coach—diminishing the likelihood that any softball player will report being raped in the future.[18]

And just recently, Kesterson was excluded from softball-team events connected to Kent State's homecoming weekend: unlike other softball alumnae (including former players who had quit the team—like Kesterson's sister, Chloe) Kesterson was not invited to participate in these softball events. Kesterson will be supplementing her complaint to include these recent acts, which prospective injunctive relief would cure for future years.

Further, prospective injunctive relief could also relieve Kesterson's premature transition into an alumna. The NCAA has an established mechanism for extending the eligibility of student-athletes who, like Kesterson, have missed a season for extenuating circumstances.[19] So the Court can order Kent State's softball coach to make things right for Kesterson to complete her fourth year of eligibility by ending the discrimination and retaliation against her and allowing her to return under constitutional circumstances.

---

[15] Doc. No. 31 at 440.

[16] Doc. No. 20 at 226–27, 244, 245–46 (¶¶ 156–60, 305, 318, 321).

[17] *Id.* at 225, 228, 239, 242, 246–47 (¶¶ 147, 163, 170–71, 262–68, 288–90, 324–27).

[18] *Id.* at 243–44 (¶¶ 295, 306).

[19] NCAA, *NCAA Division I Manual 2016–17*, at § 12.8.1.5.1, *available at* http://www.ncaapublications.com/productdownloads/D117.pdf (last visited Oct. 3, 2016).

In a similar vein, Oakley argues that he is immune from declaratory judgment because it would amount to retrospective relief.[20] The case quoted to support this argument, *Brown v. Strickland*, does not support that point. In *Brown*, a pro se plaintiff brought claims against Ohio's governor and attorney general after his expungement application was denied.[21] After mentioning the Eleventh Amendment's rule against retrospective relief, the court explained that it could issue retrospective declaratory relief so long as it is ancillary to a prospective injunction.[22] In that case, the court found that both the declaratory and injunctive relief at issue were retrospective because the relief was premised exclusively on a past injury.[23]

But Kesterson seeks prospective relief—including an end to the ongoing indifference and retaliation. Her amended complaint alleges that she will continue to be injured by ongoing unlawful conduct. And the prayer for relief seeks a prospective injunction,[24] rather than relief targeted at isolated past events. If, as Oakley suggests, the Court cannot declare that *any* past conduct is unconstitutional, on what basis could a court ever enjoin conduct prospectively? Determining that past conduct was unconstitutional is a necessary part of deciding it should be enjoined going forward.[25]

---

[20] Doc. No. 31 at 440.

[21] *Brown v. Strickland*, No. 2:10-CV-166, 2010 U.S. Dist. LEXIS 63878, at *10 (S.D. Ohio June 28, 2010).

[22] *See id*. at 10 (citing *Banas v. Dempsey*, 742 F.2d 277, 285 (6th Cir. 1984)).

[23] *Id*. at 11; *see also Green v. Mansour*, 474 U.S. 64, 73 (1985) (upholding denial of declaratory judgment because plaintiff did not claim any continuing violation of federal law or any threat of state official violating the repealed law in the future).

[24] *See* Doc. No. 20 at 247.

[25] *See ACLU of Ky. v. McCreary Cnty*., 608 F.3d 439, 445 (6th Cir. 2010) (stating that establishing a past constitutional violation is required for securing prospective injunctive relied).

Oakley further claims that the amended complaint is "devoid" of allegations that Oakley can grant the injunctive relief sought.[26] Yet the complaint contains many allegations about the power and authority of NCAA Division I coaches—including Oakley[27]— over scholarship athletes.[28] Based on the facts alleged, Oakley is uniquely positioned to carry out the requested relief. For instance, he can halt gender-based discrimination in responding to rape allegations, retract his threat to punish Kesterson for speaking out, and stop future disparate treatment of her (either as a current or former softball-program member).

Perhaps more importantly, though, plaintiffs need not allege in a complaint every last detail regarding their claims for relief. To survive a motion to dismiss, all that is required is to allege facts that give rise to a plausible claim.[29] Kesterson has exceeded that standard on all of her claims.

### B.    The Court should not dismiss Kesterson's official-capacity equal-protection claim against Oakley because he now stands in Linder's shoes and can correct her unconstitutional conduct.

Kesterson alleges only an official-capacity—not a personal-capacity—equal-protection claim against Oakley. Defendants "sued in their official capacities stand in the shoes of the entity they represent."[30] Oakley inherited Linder's shoes and is now the appropriate official from whom to seek prospective injunctive relief to fix the

---

[26] Doc. No. 31 at 440.

[27] Doc. No. 20 at 239, 242 (¶¶ 262–64, 288).

[28] *Id.* at 3–5 (¶¶ 8–11, 13–15, 17–19).

[29] *See Watson Carpet*, 648 F.3d at 458.

[30] *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003).

constitutional violations that Linder set in motion.[31] As detailed in Kesterson's response to Linder's motion to dismiss, Kesterson adequately alleges an equal-protection claim against Linder for her conduct while serving as Kent State's head softball coach.[32]

Like Linder, Oakley argues that Kesterson cannot state a claim for gender discrimination unless she alleges that a female athlete raped a male athlete and, when this hypothetical male reported the assault, he was treated better than Kesterson.[33] Such a formulation of the standard is nonsensical and unwarranted under the case law. The Supreme Court has recognized that, when it comes to sexual assault, "the sexes are not similarly situated."[34] And the Equal Protection Clause does not "require things which are different in fact to be treated in law as though they were the same."[35] Defendants' attempts to articulate the standard are actually an effort to narrow it out of existence.

Because Kesterson adequately alleges an equal-protection claim against Linder— either on a deliberate-indifference or class-of-one theory, Kesterson's official-capacity equal-protection claim against Oakley for prospective injunctive relief is proper and should stand.

---

[31] *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office, i.e., against the State.") (internal quotation omitted); *Dotson v. Collins*, 317 F. App'x 439, 440 n.1 (6th Cir. 2008) (officials alleged to have engaged in unconstitutional conduct replaced as official-capacity defendants by the current officials); *See also* Fed. R. Civ. P. 25(d) (providing for automatic substitution of a predecessor by the new official holding the position).

[32] Doc. No. 29 at 387–97.

[33] Doc. No. 31 at 442.

[34] *Michael M. v. Superior Ct.*, 450 U.S. 464, 469 (1981) (citing cases).

[35] *Id.* (internal quotation marks omitted).

**C.** **Kesterson states a claim for First Amendment retaliation based on Oakley's hostility toward Kesterson for reporting Linder.**

A First Amendment retaliation claim requires the following elements: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct."[36] Kesterson alleges each.

**1.** **Kesterson engaged in constitutionally protected conduct by reporting the rape to Linder and the cover up to EOAA.**

Kesterson alleges that she reported her rape to Linder,[37] and then later filed a Title IX complaint with the Equal Opportunity and Affirmative Action (EOAA) Department.[38] To be constitutionally protected, "[p]laintiffs need only show that their speech somehow related to a matter of community concern."[39] Kesterson meets this low threshold. The conduct Kesterson reported to her coach, and then to the EOAA Department, included violations of state law[40] and the University's student-conduct code,[41] and implicated guidance from the Department of Education's Office for Civil

---

[36] *Patarek v. Vill. of Armada*, 801 F.3d 630, 645 (6th Cir. 2015) (citation omitted).

[37] Doc. No. 20 at 202, 210 (¶¶ 1, 58, 63–64).

[38] Doc. No. 20 at 218–19 (¶¶ 111, 113–116).

[39] *Lucas v. Monroe Cnty.*, 203 F.3d 964, 974 (6th Cir. 2000).

[40] Ohio Rev. Code §§ 2907.01 *et seq.*

[41] Kent State Univ. Policy Register 5-16.2 ("Unlawful gender-based discrimination, which includes sexual harassment, sexual misconduct, [] and intimate partner violence, can interfere with a student's ability to participate in or benefit from university academic and non-academic programs . . . [and] is prohibited . . . ."), *available at* http://www.kent.edu/policyreg/administrative-policy-regarding-complaints-unlawful-gender-discrimination-gendersexual (last visited Sept. 30, 2016);Kent State Student Conduct Code § 4.A.11, *available at* http://www.kent.edu/studentconduct/code-student-conduct#sec4 (last visited Sept. 30, 2016).

Rights[42] and NCAA policies and requirements.[43] The Sixth Circuit has recognized that "tow calls are a classic issue of community concern."[44] Reporting a *rape* is of at least comparable community concern. And one should struggle to imagine a matter more worthy of community or public concern than a state official contravening her reporting requirements to suppress a rape allegation.

Oakley argues that Kesterson's speech somehow falls short because—in his view—it does not meet the standard for protecting *public-employee* speech.[45] The Supreme Court has recognized that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."[46] Under *Pickering*, courts seek a "balance between the interests of the employee as, as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."[47] Oakley cites no authority for applying this precedent to evaluate *student* speech.

---

[42]  U.S. Dept. of Educ., Office for Civil Rights, Dear Colleague Letter (4/4/11), *available at* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html (last visited Sept. 30, 2016) (noting that "[t]he sexual harassment of students, including sexual violence, interferes with students' right to receive an education free from discrimination and, in the case of sexual violence, is a crime" and that "[t]he statistics on sexual violence are both deeply troubling and a call to action for the nation.").

[43]  NCAA Exec. Comm. Statement on Sexual Violence Prevention and Complaint Resolution, *available at* https://www.ncaa.org/sites/default/files/Sexual-Violence-Prevention.pdf (stating that athletics departments must "cooperate with but not manage, direct, control or interfere with college or university investigations into allegations of sexual violence ensuring that investigations involving student-athletes and athletics department staff are managed in the same manner as all other students and staff on campus") (last visited Sept. 30, 2016).

[44]  *Lucas*, 203 F.3d at 974.

[45]  Doc. No. 31 at 445.

[46]  *Garcetti v. Celabbos*, 547 U.S. 410, 418 (2006) (citation omitted).

[47]  *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

To the contrary, in *Connick v. Myers*, the Supreme Court explicitly limited its holding to apply to public employees as opposed to private citizens who attend public universities: "We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."[48] No authority suggests that this public-personal distinction is relevant in any context other than employment, or that private citizens like Kesterson have to meet a higher threshold to have their free speech protected. The other cases that Oakley cites offer no support for extending *Pickering* outside the employment context.[49]

Because Kesterson's speech as a student related a matter of (very serious) community concern, Kesterson's conduct was constitutionally protected from retaliation.

### 2. Kesterson alleges adverse actions in close temporal proximity to her complaint against Linder.

Kesterson alleges retaliatory adverse actions by Oakley in the wake of Linder's resignation, including acting openly hostile toward Kesterson,[50] threatening to remove her from the team if she spoke out against Linder (with no exceptions—not even for participating in the ongoing EOAA investigation),[51] and cultivating team hostility

---

[48] *Connick v. Myers*, 461 U.S. 138, 147 (1983).

[49] Doc. No. 31 at 445–46.

[50] Doc. No. 20 at 242 (¶ 288).

[51] *Id*. at 226 (¶ 156).

against her.[52] Oakley personally participated in the firestorm of criticism lodged against Kesterson in the wake of Linder's resignation by posting on his Facebook wall the *Record-Courier* article where Linder lied about the reasons she resigned and claimed that "entitlement" among student athletes who "need three reasons why they need to do" what Linder told them to do led to her departure.[53] Oakley took no steps to prevent Linder and Kent State alumnae from surrounding the program, publicly decrying her resignation, and calling Kesterson "selfish," "spoiled," "disgruntled," "petty," and "entitled" on social media.[54] As head coach, Oakley hosted an alumni event where he permitted attendees to wear "We Support Karen Linder" shirts that bore the Kent logo, giving the shirts the University's apparent imprimatur.[55] He took no steps to discipline or even dissuade any of the current, active players who wore the shirts.[56] All of these acts made Kesterson's continued presence on the team unbearable.[57]

"Since there is no justification for harassing people for exercising their constitutional rights, the deterrent effect need not be great in order to be actionable."[58] Here, however, the deterrent effect was great given Oakley's control over Kesterson as her new coach.[59]

---

[52] *Id*. at 225 (¶¶ 147–50).

[53] *Id*. at 224–25 (¶¶ 144, 149).

[54] *Id*. at 224–25 (¶ 147).

[55] *Id*. at 229–30 (¶¶ 178–80).

[56] *Id*.

[57] *Id*. at 227–29 (¶¶ 160–70).

[58] *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 632 (6th Cir. 2013) (brackets and internal quotation marks omitted).

[59] Doc. No. 20 at 203–05 (¶¶ 8–11, 13–15, 17–19). Oakley's repeated reference to his 33 days as Kesterson's coach is a non-sequitur. There is not some minimum durational

### 3. Kesterson adequately alleges that her protected conduct motivated the retaliation.

Kesterson has provided sufficient factual allegations to support causation. She alleges that Oakley's acts described above were taken in response to him learning that Kesterson reported the rape and Linder's cover up.[60] Only two days separated Linder's resignation and the meeting where Oakley threatened to remove any dissenters from the team (knowing full well that Kesterson's complaint had dislodged Linder).[61] The temporal proximity alone is sufficient to adequately allege causal connection.[62] The fact that Oakley knew the circumstances leading to Linder's resignation cements it. Kesterson adequately alleges a claim for First Amendment retaliation against Oakley.

### D. Kesterson states a claim for unlawful prior restraint based on Oakley mandating that Kesterson not speak out about Linder.

Though Oakley proclaims that Kesterson asserts no facts to support her prior-restraint claim,[63] his motion to dismiss omits any argument particular to this theory. For good measure, we briefly address it. A prior restraint must be content-neutral, narrowly tailored to serve a significant governmental interest, and leave open alternatives for communication.[64] "[S]tate colleges and universities are not enclaves

---

threshold to liability. Further, Oakley's ongoing role as the team's coach makes him the precise person to correct the harm prospectively.

[60] *Id.* at 222, 226–27, 242–43 (¶¶ 136, 156–59, 288–91).

[61] *Id.* at 221, 226 (¶¶ 127, 156).

[62] *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *Paige v. Coyner*, 614 F.3d 273, 283 (6th Cir. 2010); *Benison v. Ross*, 765 F.3d 649, 661 (6th Cir. 2014); *Haji v. Columbus City Schools,* 621 F. App'x 309 (6th Cir. 2015).

[63] Doc. No. 31 at 431 ("Importantly, no facts are pleaded to show that Oakley subjected Plaintiff to a prior restraint by prohibiting her from discussing the underlying reported conduct.").

[64] *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130(1992).

immune from the sweep of the First Amendment."[65] The Supreme Court has made clear that "First Amendment standards" "must give the benefit of any doubt to protecting rather than stifling speech."[66]

The Sixth Circuit addressed a First Amendment prior-restraint claim under 42 U.S.C. § 1983 in *Whitney v. City of Milan*.[67] In *Whitney*, the defendant mayor fired the city recorder and then ordered the plaintiff, a deputy clerk, not to participate in the recorder's anticipated discrimination lawsuit. Applying the *Pickering* test (because the plaintiff was a public employee), the Sixth Circuit found that discrimination allegations are inherently matters of public concern and rejected a mayor's qualified-immunity argument on the clerk's First Amendment prior-restraint claim.[68]

Kesterson alleges that she filed a Title IX complaint against Linder and that the complaint led to Linder's resignation.[69] Two days later, Oakley, who had taken over as interim head coach, assembled the seniors and told them that anyone who said anything bad about Linder would be off the team.[70] Oakley—who knew about Kesterson's complaint—stressed that no warnings would be given.[71] This threat can hardly be characterized as a mere suggestion given Oakley's ability to make good on his threat.[72]

---

[65] *Healy v. James*, 408 U.S. 169, 180 (1972).

[66] *Citizens United v. FEC*, 558 U.S. 310, 327 (2010).

[67] 677 F.3d 292 (6th Cir. 2012).

[68] *Id.* at 297–98 (citing cases).

[69] Doc. No. 20 at 218–19, 222 (¶¶ 111, 113–16, 136).

[70] *Id.* at 226 (¶ 156).

[71] *Id.*

[72] *See generally*, *id.* at 203–05 (¶¶ 8–19).

In passing on First Amendment questions, courts "are not free to disregard the practical realities."[73] Free-speech rights are protected from governmental interference whether it is a "heavy-handed frontal attack" or "more subtle."[74] Here, Oakley used his considerable influence and authority over Kesterson—including the power to control Kesterson's life, her sport, her scholarship, and her education—to stifle her speech and prevent dissemination of her message. Oakley's demand that Kesterson keep quiet was an unconstitutional prior restraint that served no significant governmental interest.

Kesterson adequately alleges a prior-restraint claim against Oakley.

### E.    Oakley is not entitled to qualified immunity.

"The defense of qualified immunity shields government officials performing discretionary functions from liability 'insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'"[75] The immunity applies "[a]s long as [the official's] actions could reasonably have been thought consistent with the rights they are alleged to have violated."[76] But as the cases discussed above demonstrate, no reasonable public official could believe that he could—consistent with the Constitution—retaliate against a player who reported a rape by silencing her and subjecting her to a hostile team environment.

To defeat qualified immunity on a § 1983 claim against an official performing a discretionary function, a plaintiff must demonstrate that the constitutional right in

---

[73] *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 461 (1958).

[74] *Bates v. City of Little Rock*, 361 U.S. 516, 523 (1960).

[75] *Shively v. Green Loc. Sch. Dist. Bd. of Educ.,* 579 F. App'x 348, 354 (6th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818  (1982)).

[76] *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

question was clearly established law at the time the injury was sustained.[77]  "'[A] case directly on point' is not required to establish that the law is clearly established, because '[s]ome violations of constitutional rights are so obvious that a materially similar case' would be unnecessary."[78] "At bottom, the dispositive inquiry is whether, at the time of injury, the law was 'sufficiently clear [such] that a reasonable official would understand that what he [was] doing violate[d]' the plaintiff's constitutional rights."[79]

"It is fundamental that the right to be free of [] retaliation, arbitrary and capricious state action, and disparate treatment with no rational basis is clearly established."[80] The facts alleged in this case would constitute obvious violations of Kesterson's constitutional rights of which any reasonable official should have been aware.

Viewed in the light most favorable to Kesterson, the alleged facts support the conclusion that Oakley retaliated against Kesterson for her protected speech about her rape and Linder's cover up and abused his government post to mandate her silence as an express condition of participating in the softball program.

The right to be free from First Amendment retaliation has been well established for many years.[81] A public official can hardly pretend shock at the notion that he cannot

---

[77] *Saucier v. Katz*, 533 U.S. 194, 199 (2001).

[78] *Patarek v. Vill. of Armada*, 801 F.3d 630, 651 (6th Cir. 2015) (quotation omittted) (brackets in *Patarek*).

[79] *Id*. (quoting *Binay v. Bettendorf*, 601 F.3d 640, 646–47 (6th Cir. 2010)) (brackets included and internal quotation omitted in *Patarek*).

[80] *Id*. (official's abuse of his government post to retaliate against business that succeeded in obtaining zoning variance over his objection was "an obvious violation of [] constitutional rights"). *See also Brown v. Crowley*, 312 F.3d 782, 790 (6th Cir. 2002) (issuing citations in response to plaintiff's protected speech violates free-speech rights).

[81] *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (citing cases).

manipulate his power to stifle or punish speech.[82] *Wenk v. O'Reilly* clearly establishes that school officials cannot lash out when they do not like that someone has exercised the First Amendment right to file a complaint.[83] And *Whitney* clearly establishes that prior restraints cannot prohibit someone from talking about discrimination.[84]

Again, the Court "need not find a decision on all fours."[85] In arguing that he deserves immunity here, Oakley ignores the "fair warning" component of determining whether a right is "clearly established."[86] Under *Hope v. Pelzer* and its progeny, "'existing precedent must have placed the statutory or constitutional question beyond debate,' although the specific conduct need not have been found unconstitutional."[87] So Oakley's misconduct is not immunized by the fact that no other college coach has abused his power in the exact same way. The law does not provide a safety net for public officials who violate someone's clearly established constitutional rights in a particularly creative or (blessedly) uncommon way. Accordingly, Kesterson does not have to find another instance of a Division I softball coach punishing and suppressing a rape victim's speech about her rape-report-suppressing former coach.

## V.    Conclusion

Oakley's response to Kesterson's report—abusing his power to silence her and exposing her to hostility from the former coach, team, and alumnae—was deliberately indifferent, unreasonable, and unconstitutional. Construing Kesterson's amended

---

[82] *Crawford-El v. Britton*, 523 U.S. 574 (1998).

[83] 783 F.3d 585, 595 (6th Cir. 2015).

[84] 677 F.3d 292 (6th Cir. 2012).

[85] *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 684 (6th Cir. 2013).

[86] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[87] *Baynes v. Cleland*, 799 F.3d 600, 613 (6th Cir. 2015) (quotation omitted).

complaint in the light most favorable to her, accepting its factual allegations as true, and drawing all reasonable inferences in her favor, her claims against Oakley rise above the speculative level and can proceed.

Respectfully submitted,

THE CHANDRA LAW FIRM, LLC

*/s/ Ashlie Case Sletvold*
Subodh Chandra (0069233)
Ashlie Case Sletvold (0079477)
Peter Pattakos (0082884)
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Ashlie.Sletvold@ChandraLaw.com
Peter.Pattakos@ChandraLaw.com

*Attorneys for Plaintiff Lauren Kesterson*

## Certificate of service

I certify that this document was filed using the Court's ECF system, which will send notification to all counsel of record.

*/s/ Ashlie Case Sletvold*
One of the attorneys for Plaintiff Lauren Kesterson