IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAUREN KESTERSON, | ) | |
| | ) | CASE NO. 5:16CV298 |
| Plaintiff, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| KENT STATE UNIVERSITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |

This case is before the undersigned on a discovery dispute.[1] Plaintiff Lauren Kesterson ("Kesterson") seeks discovery from Defendant Kent State University ("KSU") regarding KSU's handling, including investigation, of all reports of sexual harassment, discrimination, or assault made by persons other than Plaintiff at KSU's main campus during the 5-year period beginning August 2010.[2]

Kesterson argues that the discovery is relevant to her claim against KSU under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, which is Claim 1 of her First Amended Complaint ("FAC"). Claim 1 alleges that KSU acted improperly and in violation of Title IX in the manner in which it responded to reports Kesterson made in 2014 and 2015

---

[1] Pursuant to L.R. 37.1, Kesterson requested a telephone conference to discuss the dispute on November 30, 2017 (Doc. 82), which KSU responded to on December 6, 2017. Doc. 83. The undersigned held a telephone conference with counsel on December 14, 2017 (Doc. 100), and the parties submitted supplemental briefs on December 22, 2017, and January 2, 2018. Doc. 102, 107.

[2] Kesterson's original request sought such information for a 17-year period beginning January 1, 2001, and for all reports arising at all of KSU's campuses. After a telephone conference with the undersigned reflected in a minute Order (Doc. 100), she has narrowed her request to KSU's main campus and the time period August 2010 to August 2015, which she says is "the five-year period preceding when the University finally began investigating her rape." Doc. 102, p. 2. Pursuant to the undersigned's minute order directing her to address the privacy interests of non-parties, Kesterson indicates that she is "willing to receive the information in a manner that does not identify individual students . . . provided the information . . . allows her to track the steps taken to respond to each report." Id.

regarding a sexual assault against her that occurred in 2012; Claim 1 does <u>not</u> allege that KSU is liable for the underlying 2012 assault.

KSU objects to the discovery, arguing that it is not relevant to Claim 1, that it would violate the privacy expectations of other students and employees, and that it is overly burdensome. Doc. 83, p. 2.

As is explained below, neither Claim 1 nor the case law cited by Kesterson supports the discovery she seeks. Accordingly, the undersigned finds that she is not entitled to that discovery.

## I. The First Amended Complaint

### A. The FAC's Factual Allegations

Kesterson's First Amended Complaint ("FAC") (Doc. 20) alleges that she is a former member of the varsity softball team at KSU, which was coached by Defendant Karen Linder ("Linder"). She alleges that, in December 2012, she was raped by Linder's son. Doc. 20, p. 6, ¶¶27-34.

In mid-May 2014, Kesterson reported the rape to Linder. Id., pp. 9-10, ¶¶56-63. Following Kesterson's report to Linder, Linder violated a number of KSU's policies by failing to report the assault to KSU's Title IX coordinator. Linder also failed to take any steps to address the assault; all she did was instruct Kesterson not to tell anyone about it. Id., p. 13, ¶¶80, 83.

On August 24, 2015, Kesterson met with KSU's Deputy Coordinator for Title IX and signed a Title IX complaint against Linder. Id., p. 19, ¶¶113-116. Four days later, Linder resigned from KSU. Id., p. 21, ¶127. On January 8, 2016, after being contacted by Kesterson's attorney, KSU issued a report on its investigation of Kesterson's complaint. Id., p. 31, ¶188.

### B. Claim 1 of the FAC

Claim 1 of the FAC is captioned "Sex discrimination including retaliation against Kent State University under Title IX of the Education Amendments of 1972, 20 U.S. C. §§ 1681-

1688." Doc. 20, p. 35.  Claim 1 alleges that Kesterson's report to Linder in May 2014 gave KSU actual notice of the sexual assault against Kesterson (id., p., 36, ¶221) and that Kesterson's report to the Title IX Deputy Coordinator in August 2015 gave KSU actual knowledge of Linder's discriminatory conduct in covering up Kesterson's complaint about the rape.  Id., p. 38, ¶247.  Claim 1 asserts that KSU "was deliberately indifferent to the sex-based harassment that Ms. Kesterson reported" to Linder and the Title IX Deputy Coordinator and that KSU "acted with gender-based discriminatory intent in failing to respond to her complaints including taking adequate steps to prevent retaliation."  Id., p. 40, ¶¶ 269, 271.

## II. Analysis

Fed. R. Civ. P. 26(b) permits discovery regarding "matters relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Kesterson's Notice of Discovery Dispute stated that the discovery requested was relevant both to her Title IX claim against KSU and her class of one equal protection claim against Defendant Linder.  Doc. 82, p. 2.  With respect to the claim against Linder, the undersigned previously ruled that Kesterson is entitled to discovery only as to other reports made to Linder.  Doc. 100.  KSU has produced those reports.  Doc. 83, p. 4.  Accordingly, the issue remaining relates solely to Claim 1 of the FAC.[3]

### A. *Doe v. Univ. of Tennessee*

In support of her discovery request, Plaintiff relies on *Doe v. Univ. of Tennessee*, 186 F.Supp.3d 788 (M.D.Tenn. 2016).  In *Doe*, seven female university students brought Title IX claims against the University of Tennessee ("UT") alleging that they were sexually assaulted by male football and basketball players and that, after they complained, the university treated them

---

[3] In her Notice of Discovery Dispute, Kesterson also contended that the Report of Parties' Planning Meeting indicates that the parties had "agreed" to the disputed discovery.  Doc. 82, p. 1.  However, that filing does not support Plaintiff's contention.  Doc. 39, pp. 2-3.

in an unfair and discriminatory way. 186 F.Supp.3d at 791. The plaintiffs alleged "two separate types of Title IX violations"—which the court referred to as "before" claims and "after" claims. *Id*. at 791-792. In the "before" claims, the plaintiffs alleged that "UT's official and unofficial policies—including its deliberate indifference to a pattern of prior sexual assaults and other misconduct by male UT athletes, as well as its fostering of a sexually hostile environment—rendered female students vulnerable to sexual assault, and therefore UT is liable for the sexual assaults against the plaintiffs." *Id*. at 791. The court stated, "These claims are referred to by the parties as the 'before' claims, because they arise from allegations about UT's actions before the plaintiffs were assaulted." *Id*. In the "after" claims, the plaintiffs alleged that the university's inadequate and discriminatory response to the their reports of sexual assaults, including disciplinary proceedings that violated Title IX, denied them access to educational benefits and opportunities at the university. *Id*. at 791-792. The court stated, "These claims are referred to as the "after" claims, because they arise from allegations about UT's actions after UT was notified of the plaintiffs' assaults." *Id*. at 792.

UT filed a motion to dismiss. With respect to the plaintiffs' "before" claims, UT argued that it could not be held liable under Title IX for the assaults perpetrated by the male student athletes. *Id*. at 803. The court rejected UT's arguments. The court discussed relevant case law[4] and explained that the cases could be read to support Title IX liability for the acts of third parties in two circumstances: (a) when the Title IX funding recipient had actual knowledge of known harassment or assault and was deliberately indifferent to that harassment or assault; and (2) when the funding recipient had official policies that rendered the plaintiffs vulnerable to the

---

[4] The court discussed *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998), *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999), *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007), *Klemencic v. Ohio State Univ.*, 263 F.3d 504 (6th Cir. 2001), *Patterson v. Hudson Area Schs.*, 551 F.3d 438 (6th Cir. 2009), *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253 (6th Cir. 2000) and cited *McCoy v. Board of Educ. of Columbus City Schs.*, 515 Fed.Appx. 387 (6th Cir. 2013), *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479 (6th Cir. 2006), W*illiams ex. rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360 (6th Cir. 2005), and *Lopez v. Metro. Gov't*, 646 F.Supp.2d 891 (M.D.Tenn. 2009).

harassment or assault. *Id*. at 804-806. The court found that the plaintiffs' complaint contained allegations that stated a "before" claim under either theory. *Id*. at 806.

As for the first theory, the *Doe* complaint included allegations that the university had actual knowledge of an inordinate number of prior incidents of sexual assault by university football and basketball players (*id*. at 806); that UT's athletic department attempted to cover up the incidents and failed to work with police and other university administrators; that the university did not discipline the perpetrators (*id*. at 792); that UT misused the Tennessee Uniform Administrative Procedures Act, allowing perpetrators to delay discipline or avoid it altogether; and that UT used a method for selecting judges to hear cases that did not comply with Title IX. *Id*. at 792-793. These alleged facts stated a "before" claim that UT had actual knowledge of a pattern of prior assaults by football and basketball players against female students and was deliberately indifferent to that behavior.

As for the second type of "before" claim, the court found that the complaint alleged that the university had official policies that left the plaintiffs vulnerable to assault (*id*. at 806), including by encouraging and condoning varsity athletes "to have parties with alcohol and drugs, entertain recruits, provide alcohol to underage female students"; interfering with athlete discipline; housing first-year female students in a dorm "alongside upper class male athletes"; and by failing to implement sexual harassment training. *Id*. at 793-794, 807-808. The *Doe* court likened these allegations to those in *Simpson v. University of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007). In *Simpson*, female students at the University of Colorado Boulder ("UC Boulder") alleged that the university was liable for sexual assaults they suffered at a party attended by UC Boulder football players and recruits. The Tenth Circuit reversed the district court's order entering summary judgment for UC Boulder. The Tenth Circuit held that a genuine issue of material fact existed where there was evidence that the university regularly held

5

recruiting events for university football players in which recruits were paired with female host students to entertain them, creating an expectation of sex; prior recruiting events had yielded sexual assaults; and UC Boulder had ignored warnings from the local district attorney that it should establish policies to supervise recruits. *Id*. at 805.

### B. Plaintiff's FAC does not allege a "before" claim

In her supplemental brief, Kesterson first describes her Title IX claim against KSU as alleging "sex discrimination and retaliation for reporting sexual assault" (Doc. 102, p. 1), *i.e.*, it is an "after" claim. However, Kesterson then belatedly attempts to add an unpled "before" claim to her "after" claim when she says that she seeks information regarding the University's handling of reports made by others regarding incidents of sexual harassment/assault because

> she believes [it] will show that the University's approach to dealing with such complaints made her more vulnerable to experience both the underlying harassment and retaliation for reporting it.[]

Doc. 102, p. 2. She asserts that Kent State, through its "official (though unwritten) custom, policy, or practice provided inadequate means to address sexual assault, thus making [Kesterson] more vulnerable to it (and to retaliation for reporting it)." Doc. 102, p. 3. Thus, she attempts to describe a "before" claim, i.e., that KSU created an environment that led to her being sexually assaulted.

During the phone call with the undersigned, Kesterson was directed to identify "specific paragraphs in Claim 1 of the FAC that support the relevance of her discovery request," i.e., allegations in her FAC consistent with a "before" claim.[5] See Doc. 100, p. 2. In a footnote of her brief, Kesterson identifies the following paragraphs of her FAC:

> 193. Kent State's investigation into Ms. Kesterson's complaints—and particularly the delays in conducting it and releasing the investigation report—was inadequate and led to

---
[5] During the call, the undersigned discussed with the parties the nature of "before" and "after" claims discussed in *Doe*.

> Ms. Kesterson being ostracized and harassed by members of the University and softball communities.
>
> 269. Kent State was deliberately indifferent to the sex-based harassment that Ms. Kesterson reported.

Doc. 20, p. 31, ¶193; p. 40, ¶269. Doc. 102, p. 2, n.3. Both of these allegations describe actions that KSU took after Kesterson reported the sexual assault. Neither describes a "before" claim or explains how KSU's actions created an environment that made it more likely that Kesterson would be sexually assaulted. Additionally, Paragraph 193 is not contained in Claim 1.

In another footnote, Kesterson refers to a number of paragraphs of the FAC that she says support her contention that KSU officials "historically responded to Title IX issues, including in the Athletic Department" in a "lackluster manner." She cites to ¶¶194-208 of the FAC, paragraphs that are not tethered to any claim for relief but that describe a KSU employee's complaint in 2015 about sexual harassment by a supervisory employee in the Athletic Department. She also cites to Paragraphs 242 and 281-282, which allege that Linder acted with discriminatory intent when she failed to respond to Kesterson's complaint and that KSU also failed to act in response to her reports that she was assaulted, which "tacitly endorsed" the assault "and made all female student-athletes more vulnerable to sexual assault." Doc. 102, p. 4, n. 12. These paragraphs of the FAC relate to matters that occurred years after the 2012 assault against Kesterson and do not show that she was made more vulnerable to the assault, *i.e.*, they do not establish a "before" claim.

With respect to the allegations regarding the KSU employee's complaint of sexual harassment, Kesterson notes that this Court cited *Doe*, *supra*, and denied KSU's motion to strike those allegations from the FAC. Doc. 82, p. 2; Doc. 102, p. 3, n.6. Kesterson contends that, in denying KSU's Motion to Strike, the Court found that she is "entitled to test whether the University had an official policy regarding the treatment of sexual assault and harassment." Doc.

82, p. 2. Kesterson reads too much into the Court's ruling on KSU's motion to strike; the Court specifically stated in its ruling that motions to strike are not vehicles for deciding substantive issues in a case. Doc. 34, pp. 12-13.

Kesterson also argues that she has alleged a "before" claim because KSU had an "official (though unwritten) custom, policy, or practice" of not following its written policy regarding how it responded to complaints of sexual assault. Doc. 102, p. 3. She does not identify paragraphs in her FAC that support this argument as the undersigned ordered her to do. However, she claims that deposition testimony of unnamed witnesses shows that she told "*six* university employees about being assaulted before the University even began an investigation" and that five of them "did nothing." Doc. 102, p. 3 (emphasis in original).[6] She asserts, "it is reasonable to conclude that the five employees who did nothing in response to Ms. Kesterson's reports were following the University's unwritten practice instead of its written policy." Doc. 102, p. 3. This argument is not persuasive because, even if Kesterson's new allegations are taken as true, they do not establish a "before" claim.

Kesterson's argument, made in support of her request for discovery regarding reports made by others, is insufficient to turn her "after" claim into a "before" claim. Simply put, the FAC does not state a "before" claim. Claim 1 alleges that KSU violated Title IX in its responses to Plaintiff's report regarding a sexual assault and her report regarding Linder's conduct, i.e., it states an "after" claim. Kesterson's "after" claim requires only that she show that KSU responded to her Title IX complaint with deliberate indifference. Kesterson acknowledges as much when she states, "To prove her Title IX claim, Ms. Kesterson must show that Kent State was deliberately indifferent to her reports." Doc. 102, p. 2. *See Doe*, 186 F.Supp.3d at 809 (a

---

[6] In her brief, Plaintiff did not name the six employees and did not identify the persons whose depositions apparently support this assertion. She merely states, "Depositions were conducted on December 13-15 and the transcripts are not yet available. Ms. Kesterson will supplement this submission when the final transcripts are available." Doc. 102, p. 3, n. 8. More than one month later, no such submission has been filed.

Title IX retaliation claim requires that a plaintiff show only how the defendant responded to <u>her</u> reports). Accordingly, records of investigations of all reports of sexual assault or retaliation at KSU's main campus between August 2010 and August 2015 are not relevant to Kesterson's Title IX claim against KSU.

### III. Conclusion

For the reasons set forth above, the undersigned finds that Plaintiff is not entitled to the discovery she seeks from KSU.

IT IS SO ORDERED.

Dated: February 12, 2018

Kathleen B. Burke
United States Magistrate Judge