# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| LAUREN KESTERSON, | ) | CASE NO. 5:16-cv-298 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| KENT STATE UNIVERSITY, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on the appeal by plaintiff Lauren Kesterson ("Kesterson") of the magistrate judge's February 12, 2018 memorandum opinion and order (Doc. No. 123 ["MJ MOO"]) resolving the parties' discovery dispute relating to the production of documents associated with prior student complaints of sexual harassment, discrimination, or assault on the campus of defendant Kent State University ("Kent State"). (Doc. No. 127 (Objections ["Obj."]).) Kent State filed a response to Kesterson's appeal. (Doc. No. 131 ["Obj. Res."].) Kesterson has also moved for leave to file a second amended complaint ("SAC"). (Doc. No. 124 ["Mot. Amend"].) Defendants—Kent State, Karen Linder ("Linder"), and Eric Oakley ("Oakley") (collectively "defendants")—oppose Kesterson's request to amend. (Doc. No. 125 ["Mot. Amend Opp'n"].)

I. **BACKGROUND**

At the time of the filing of the first amended complaint ("FAC"), Kesterson was a student at Kent State and a former member of Kent State's softball team. Kesterson claimed that defendants violated her constitutional and statutory rights by their mishandling of a report she made to Linder, her softball coach and then-Kent State employee, regarding an alleged sexual

assault perpetrated against her by another student-athlete, Linder's son. Claim 1 of the FAC raises a sexual discrimination and retaliation claim against Kent State under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"). Claim 2 raises an equal protection claim against Linder and Oakley. Plaintiff raises two more claims against the individual defendants: Claim 3 sets forth a First Amendment prior restraint claim, and Claim 4 alleges First Amendment retaliation. (Doc. No. 20 (FAC).)

The factual predicate for these claims was set forth in detail in the Court's March 15, 2017 memorandum opinion resolving Kent State's motion to strike and the motions to dismiss filed by Linder and Oakley, and familiarity with this ruling is presumed. (*See* Doc. No. 34 ["MO"].) Briefly, it is sufficient to note that the facts that give rise to this lawsuit begin with a 2012 encounter between Kesterson and Linder's son, Tucker. At the time of the incident, Kesterson and Tucker were both student athletes at Kent State. Kesterson claims that Tucker raped her while the two were spending time together in Tucker's dorm room. (FAC ¶¶ 27-34.) Kesterson did not initially report the incident, but, during an exit interview at the end of the 2014 softball season, Kesterson reported the rape to Linder. (*Id.* ¶¶ 56-71.)

Linder failed to follow Kent State's official policy requiring all student complaints of sexual assault and harassment to be promptly reported to the university's Title IX Office. Instead, the FAC alleges that Linder engaged in a campaign designed to harass Kesterson and punish her for raising the complaint against Linder's son. Kesterson eventually reported the rape, and Linder's alleged misconduct, to a representative from Kent State's Title IX Office, Erin Barton, in 2015. (*Id.* ¶¶ 78-80, 90, 113-26.) Shortly thereafter, Linder resigned her position as Kent State's softball coach. (*Id.* ¶ 127.) She was replaced by Oakley, who, according to

Kesterson, continued Linder's approach of harassing Kesterson. (*See, e.g., id*. ¶¶ 156-60.) Believing that she was being punished and tormented for filing a Title IX complaint, Kesterson eventually quit the softball team and forfeited her athletic scholarship. (*Id*. at ¶¶ 169, 171, 175-76.)

Kesterson filed the present lawsuit on February 9, 2016 against Kent State and Linder. Kent State subsequently moved for partial judgment on the pleadings because the complaint improperly pleaded an equal protection claim against it. (Doc. No. 14.) Linder also moved, pursuant to Fed. R. Civ. P. 12(b)(6), for dismissal of all claims raised against her. (Doc. No. 15.) In response, Kesterson moved for leave to file the FAC to remove the equal protection claim against Kent State and to add a new defendant, Oakley, to the pleadings. Kent State responded with a motion to strike several paragraphs of the proposed FAC. (Doc. No. 24.)

On March 15, 2017, the Court denied Kent State's motion to strike and Linder's motion to dismiss, and granted, in part, Kesterson's motion to amend and Oakley's motion to dismiss. (MO at 518[1].) The Court determined that the case would proceed on Kesterson's "Title IX claim against Kent State, her equal protection and First Amendment prior restraint claims against Oakley in his official capacity, her First Amendment prior restraint claim against Oakley in his individual capacity, and her equal protection and First Amendment claims against Linder in her individual capacity." (*Id*.)

The parties have engaged in a vigorous, and at times contentious, discovery practice, requiring intervention by the Court and the magistrate judge on several occasions. (*See* 7-10-17 Minutes; Doc. No. 57 (referral to magistrate judge); 8-02-17 Minutes; Doc. No. 62 (referral to

---

[1] All page numbers are to the page identification number generated by the Court's electronic docketing system.

3

magistrate judge); Doc. No. 63 (notice of discovery dispute).) On December 8, 2017, the Court referred to the magistrate judge a discovery dispute relating to a request for documents propounded upon Kent State by Kesterson. (Doc. No. 88.) By her request, Kesterson sought the production of documents relating to any and all reports of sexual harassment, discrimination, or assault made over a 17-year period beginning January 1, 2001 at all of Kent State's campuses. (MJ MOO at 920 n.1.) After an initial phone conference with the magistrate judge, Kesterson narrowed her request to all reports made within a 5-year period at Kent State's main campus. (*Id.*)

In supplemental briefing, Kesterson represented that she needed the reports, as part of her Title IX claim, to show that Kent State's "approach to dealing with such complaints made [Kesterson] more vulnerable to experience both the underlying harassment and retaliation for reporting it." (Doc. No. 102 at 829-30, footnote omitted.) As support, she claimed that her Title IX claim against Kent State encompassed the notion that Kent State had adopted an informal policy that favored perpetrators of sexual harassment. (*Id.*, footnote omitted.)

In a memorandum opinion and order dated February 12, 2018, the magistrate judge ruled, under Fed. R. Civ. P. 26(b), that Kesterson was not entitled to the documents from prior student reports of sexual harassment and assault. In support of her decision, the magistrate judge relied, in part, on *Doe v. Univ. of Tenn.*, 186 F. Supp. 3d 788 (M.D. Tenn. 2016), a case cited by Kesterson. The magistrate judge noted that in *Doe* the court separated Title IX claims against universities into two categories: "before" and "after" claims. While "before" claims involved a university's prior practices or prior adoption of a policy that fostered a sexually hostile environment and made students more vulnerable to sexual assault, "after" claims were limited to

the university's conduct occurring after the plaintiff-student was assaulted and in response to that report. The magistrate judge found that the allegations in Kesterson's FAC only supported an "after" claim because they focused on Kent State's response to Kesterson's reporting of her sexual assault. In so ruling, the magistrate judge noted that Kesterson was unable to point to any allegations in the FAC that would support the theory that Kent State had previously adopted an informal policy that had any bearing on Kesterson's subsequent report. (MJ MOO at 925.) Kesterson now appeals this ruling, and seeks leave to further amend her complaint. (*See* SAC appended at Doc. No. 124-1; *see also* Doc. No. 124-2 (redline comparison of the FAC and proposed SAC).)

## II. KESTERSON'S APPEAL OF THE MAGISTRATE JUDGE'S DISCOVERY RULING

### A. Standard of Review

The Court's review of an appeal from a magistrate judge's pre-judgment order on a non-dispositive motion is governed by Local Rule 72.3(a), which provides that the Court "shall consider the appeal and shall set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." *See also* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). "The 'clearly erroneous' standard applies only to factual findings made by the Magistrate Judge, while her legal conclusions will be reviewed under the more lenient 'contrary to law' standard." *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992) (citations omitted).

"In reviewing a magistrate judge's decision to determine whether it is 'contrary to law,' a district court is to apply the same standard the Sixth Circuit employs to review a district court's ruling on an evidentiary question, which is an 'abuse of discretion' standard. An 'abuse of discretion' occurs when a court 'improperly applies the law or uses an erroneous legal

5

standard.'" *Phillips v. Philip Morris Cos., Inc*., No. 5:10CV1741, 2013 WL 3291516, at *2 (N.D. Ohio June 28, 2013) (some internal quotation marks omitted) (quoting *JGR, Inc. v. Thomasville Furniture Indus., Inc*., No. 1:96-CV-01780, 2006 WL 45679, at *1 (N.D. Ohio Feb. 24, 2006) ((quoting *United States v. Taplin*, 954 F.2d 1256, 1258 (6th Cir. 1992))).

"A finding is clearly erroneous 'when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed … [T]he test is whether there is evidence in the record to support the lower court's finding, and whether its construction of the evidence is a reasonable one.'" *Id.* at *2 (some internal quotation marks omitted) (quoting *JGR, Inc.*, 2006 WL 456479, at *1) ((quoting *Heights Cmty. Cong. v. Hilltop Realty, Inc*., 774 F.2d 135, 140 (6th Cir. 1985))). This standard does not empower a reviewing court to reverse the magistrate judge's finding simply because it would have decided the matter differently in the first instance. *Anderson v. Bessemer City, N.C*., 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985).

**B.     Discussion**

It is Kesterson's position that the magistrate judge's decision unfairly deprives her of necessary information for her Title IX claim against Kent State. (Obj. at 1097.) She complains that the magistrate judge improperly attempted to force her Title IX claim into the "before and after" scheme discussed in *Doe v. Univ. of Tenn*., suggesting that the magistrate judge misunderstood the nature of Kesterson's claim. (*Id*. at 1097.) Instead of alleging the creation of a pre-existing environment that led to her assault, Kesterson maintains that she "is alleging that Kent State adopted deliberate indifference to sexual misconduct claims *as its own* unwritten custom, policy, or practice." (*Id*. at 1097-98, emphasis in original.)

6

Even putting aside the "before and after" analysis of claims advocated for in *Doe v. Univ. of Tenn.*, the Court finds that the magistrate judge properly denied Kesterson's request for discovery because the request did not seek documents supportive of any claim in the FAC.[2] Until recently, Rule 26(b)(1) of the Federal Rules of Civil Procedure broadly stated that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . [so long as] the information sought appears reasonably calculated to lead to the discovery of admissible evidence." As of December 2015, Rule 26(b)(1) has been narrowed to only allow discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." The requested discovery, therefore, must be relevant to one of Kesterson's claims.

A review of the FAC reveals that Kesterson has failed to allege that Kent State adopted an unwritten policy of deliberate indifference. The only references to a policy in the FAC are made in response to Linder's alleged deliberate refusal to report Kesterson's assault complaint as required by Kent State's established policy. (*See, e.g.,* ¶ 72 ["Had Coach Linder responded to this complaint in accordance with University policy and as required by Title IX and the United States Constitution, things would have turned out much differently."]; ¶ 79 ["Following Ms. Kesterson's report in May 2014, Coach Linder did not follow [Kent State's] policies regarding sexual harassment."]; *see* ¶¶ 80-1, 87, 109, 118, 119, 237, 243, 272, 280, 282-5.) To drive home the significance of Linder's intentional refusal to follow Kent State's policy, the FAC even highlights a prior incident wherein Linder followed Kent State's policy and promptly reported

---

[2] The Court notes, however, that Kesterson specifically relied on *Doe v. Tenn.*, both before the magistrate judge, and on appeal to this Court, in defending her request for discovery. (*See* Obj. at 1099 ["*Doe* provides support for the type of discovery that Ms. Kesterson seeks by showing the viability of her legal claim."]; Doc. No. 102 (Supplemental Brief) at 830-31.)

the sexual assault complaint of another student athlete. (FAC ¶¶ 84-88.)[3]

Notwithstanding these allegations, Kesterson insists that she has also pled that Kent State had an unwritten and informal policy of deliberate indifference, specifically citing ¶¶ 193 and 269 of the FAC. (Obj. at 1095 n.2.) Paragraph 193 merely alleges that Kent State's investigation into Kesterson's complaint was "inadequate," and paragraph 269 provides simply that "Kent State was deliberately indifferent to the sex-based harassment that Ms. Kesterson reported."[4] Neither paragraph alleges that Kent State's response to Kesterson's complaint was consistent with, or dictated by, an unwritten policy of deliberate indifference.

Kesterson also notes that discovery has uncovered "at least one other incident in which [Kent State] officials treated another student's sexual-assault report with deliberate indifference," (Obj. at 1098), and points to several paragraphs in her proposed SAC. (Obj. at 1095 n.2, citing SAC.) This information was not presented to the magistrate judge. As with any other appeal, it is inappropriate to attack a magistrate judge's determination with evidence and arguments not presented to the magistrate judge. *Diorio v. TMI Hospitality*, No. 4:15-CV-1710, 2017 WL 1399869, at *3 (N.D. Ohio Apr. 19, 2017) (citing *Nathan v. Ohio State Univ.*, No. 2:10-CV-872, 2013 WL 139874, at *4 (S.D. Ohio Jan. 10, 2013) ((citing *Murr v. United States*, 200 F.3d 895,

---

[3] Indeed, the heading for this section of the FAC provides "Coach Linder knew exactly what to do when a softball player reported a rape because she had done it just days earlier when another softball player reported during her exit meeting that she had been raped." (FAC at 214.)

[4] Kesterson's cite to *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 261 (6th Cir. 2000) as authority for the proposition that a school is responsible if it has knowledge that its remedial actions are insufficient and fails to act is unavailing for at least two reasons. First, and foremost, Kesterson did not plead facts to support such a theory of liability. Second, the facts in *Vance* are easily distinguishable as they involved repeated complaints by the same student to a pattern of assaults and degradations for which the school's continuing responses were ineffective. It was against this backdrop that the Sixth Circuit held that "where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior." *Id*. at 261. Kesterson's citation in the FAC to a single incident, alone, does not set forth facts that, if believed, would establish that Kent State was aware that its remedial efforts were ineffective.

902 (6th Cir. 2000))). Accordingly, this information cannot be relied upon to demonstrate that the magistrate judge abused her discretion.[5]

In fact, if anything, the language in the proposed SAC underscores the fact that Kesterson did not plead in the FAC the existence of an unwritten university policy. In addition to the insertion of the word "written" in front of every original reference to Kent State's policies (*see, e.g.,* SAC ¶¶ 72, 79, 80, 84), the proposed SAC includes allegations that set forth, for the first time, the adoption of *unwritten* policies. (*See, e.g., id.* ¶ 335 [proposing, in part, the language "Kent State's unwritten custom, policy, or practice of failing to enforce or effectively implement its written policies regarding responding to reports of sexual misconduct made Ms. Kesterson more vulnerable to the retaliation that Coach Linder inflicted on Ms. Kesterson"]; *see id.* ¶¶ 214-215.) It is clear that Kesterson's proposed SAC represents an attempt to insert an entirely new theory of liability into the pleadings.[6]

Because the FAC fails to allege a claim that Kent State responded to Kesterson's complaint in conformity with a pre-existing policy of deliberate indifference, Rule 26(b)(1) would not support her request for discovery. Accordingly, and for all of the foregoing reasons, the Court is not left with the definite and firm conviction that the magistrate judge erred, nor

---

[5] Kesterson also relies on the fact that this Court denied Kent State's motion to strike several paragraphs in the FAC relating to the investigation into a complaint made by a Kent State employee as to sexual harassment by a co-worker. As the magistrate judge correctly found, this Court did not rule that Kesterson had properly pled the existence of a prior unwritten policy of deliberate indifference. Instead, by denying the motion to strike, the Court merely ruled that such claims can exist and that it was inappropriate to determine whether the FAC contained such a claim on a motion to strike in the absence of a Rule 12(b)(6) motion testing the sufficiency of the pleadings. (MO at 496, citing *Damron v. ATM Cent. LLC*, No. 1:10-CV-01210-JDB-egb, 2010 WL 6512345, at *2 (W.D. Tenn. Oct. 29, 2010) ("Motions to strike should not be used to decide substantive issues of law or disputed fact[.]") (citation omitted).)

[6] Kent State represents, and the FAC bears out, that, to date, it has reasonably been defending a conventional deliberate indifference case where an "appropriate person," namely Linder, had actual knowledge of an instance of sexual assault, sexual harassment or gender discrimination but responded with deliberate indifference. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257-58, 129 S. Ct. 788, 172 L. Ed. 2d 582 (2009).

does it find that the magistrate judge abused her discretion, in concluding that Kesterson's discovery request was improper under Rule 26(b)(1). Kesterson's appeal from the magistrate judge's discovery order is DENIED.

### III. KESTERSON'S MOTION TO AMEND

Kesterson also seeks leave to further amend the complaint "to more fully articulate and clarify the basis for her claims based on information learned through the discovery process." (Mot. Amend at 930.) She represents that the proposed amendments do not add new claims or parties and will require no additional discovery. (*Id*.) Defendants oppose the motion to amend, noting that the motion comes several months after the Court's deadline to amend pleadings and well after the close of fact discovery, and is based on facts known to Kesterson from the onset of the litigation. (Mot. Amend Opp'n at 1070.) Collectively they complain that "[a]lthough [Kesterson] argues that the purpose of the amendment is to conform the pleadings to the evidence developed in discovery, the amendment is an effort to change the legal theories underlying [her] claims, and should not be permitted." (*Id*.)

#### A. Standard of Review

Rule 15(a)(2) governs motions to amend pleadings at the pre-trial stage, and provides that the court should "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Nevertheless, denying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222

(1962)). Under Rule 15(a)(2), "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (quotation marks and citation omitted).

Where "the deadline for amending pleadings established by the Court's scheduling order has passed, the Sixth Circuit has made clear that, 'a plaintiff must first show good cause under Rule 16(b) for failure earlier to seek leave to amend' and the Court 'must evaluate prejudice to the nonmoving party before [it] will consider whether amendment is proper under Rule 15(a).'" *Bare v. Fed. Express Corp.*, 886 F. Supp. 2d 600, 605 (N.D. Ohio 2012) (quoting *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009) (further quotation marks and citation omitted)); *see Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 449 (6th Cir. 2010) (recognizing that the Sixth Circuit applies a different standard when reviewing a decision on a motion to amend filed after the date set forth in the Rule 16 scheduling order) (citing *Leary v. Daeschner*, 349 F.3d 888, 905-09 (6th Cir. 2003)).

"In order to demonstrate good cause, the plaintiff must show that the original deadline could not reasonably have been met despite due diligence and that the opposing party will not suffer prejudice by virtue of the amendment." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014) (citing *Leary*, 349 F.3d at 906). "A plaintiff does not establish 'good cause' to modify a case schedule to extend the deadline to amend the pleadings where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the complaint before the deadline." *Id.* (citing *Leary*, 349 F.3d at 908) (observing that the plaintiffs did not demonstrate good cause for their delay in seeking monetary damages, but were "obviously aware of the basis of the claim for many months") (further citations

omitted). However, to deny a motion to amend, the Court must also find "'at least some significant showing of prejudice to the opponent[.]'" *Leary*, 349 F.3d at 907 (quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)) (further quotation marks and citation omitted).

B.   **Discussion**

Kesterson filed the present motion to amend on February 12, 2018. Pursuant to the Court's Case Management Plan and Trial Order ("CMPTO"), the deadline to add parties or amend pleadings was June 30, 2017, with non-expert discovery to be completed by January 12, 2018. (Doc. No. 41 (CMPTO) at 600.) At the parties' request, the Court extended the deadline for fact discovery to January 31, 2018. (Non-Doc. Order 12-29-17.) Because the present motion to amend was filed beyond the deadline for amending the pleadings, before the Court can consider whether to permit a Rule 15(a) amendment, it must consider whether Kesterson has demonstrated good cause for the delay. According to Kesterson, any delay in seeking leave was attributed to general difficulties experienced during discovery and, in particular, Kent State's delay in responding to document requests. (Mot. Amend at 935.) Yet, she does not identify any documents belatedly produced by any party that were essential to formulating the allegations she seeks to inject into the case.[7]

Instead, a review of that SAC reveals that the factual allegations supporting her proposed

---

[7] Kesterson also claims that counsel "have been transitioning primary case responsibilities from Ashlie Case Sletvold to Subodh Chandra given her recent illness and pregnancy complications." (*Id.* at 935.) What she fails to note is that Attorney Chandra has been designated as *lead counsel* in this case from its inception. The Court previously granted the parties' motion to extend fact discovery from January 12, 2018 to January 31, 2018, because Kesterson's counsel "with primary responsibility" for this case was experiencing health issues. (Doc. No. 103 at 859.) However, on January 29, 2018, the Court denied Kesterson's motion to extend all deadlines by three months to permit Attorney Sletved to transition duties to Attorney Chandra, noting the fact that, as *lead counsel*, Chandra should not need time to get up to speed. (Doc. No. 117 at 898) The Court finds the internal staffing decisions of Kesterson's counsel is a likewise insufficient reason to justify her substantial delay in seeking leave to amend.

SAC involve information that Kesterson knew from the outset of the litigation. The proposed amendments center on allegations that, in addition to the previously pled reports made to Linder in 2014 and to Barton in 2015, Kesterson made four additional "Title IX reports" to employees of Kent State. (*See* SAC ¶ 88 [recounting reports made to Jessica Bachkora and Mandee Luers]; ¶ 90 [report made to Deborah Keith]; ¶ 101 [October 17, 2014 report to Heather Adams].)

These newly alleged reports, in turn, supply the foundation for Kesterson's new theory that Kent State had previously adopted an informal policy of deliberate indifference. According to the SAC, the fact that Kent State took no action upon Kesterson's multiple reports to Kent State staff "suggests that, despite its written policies, Kent State has an unwritten practice or custom of failing to consistently abide by or effectively implement its written policies regarding sexual misconduct." (*Id*. ¶ 92; *see also* ¶¶ 101, 104-5, 124, 215, 335.)

Of course, Kesterson was aware when the lawsuit was filed in 2016 (and in 2017 when she first sought leave to amend) with whom she had spoken regarding the alleged assault. She was also aware that Kent State did not respond to her regarding her accusations until after she reported the incident, and Linder's refusal to take action on her complaint, to Barton in 2015. The fact that she only now appreciates the potential legal significance of these prior reports does not excuse the delay in seeking leave to amend. *See, e.g., Victory Lane Quick Oil Change, Inc. v. Hoss*, No. 07-14463, 2009 WL 10680591, at *2 (E.D. Mich. Apr. 14, 2009) ("Yet, where a party misconceives the law, that is not an excuse for the late presentation of an alternative theory of recovery, and the party must present substantial reasons to allow the late amendment.") (citing *Troxel Mfg. Co. v. Schwinn Bicycle Co*., 489 F.2d 968, 971 (6th Cir. 1973)).

Kesterson also seeks to include other allegations based on facts known to her at the

beginning of the lawsuit. Specifically, she requests leave to include allegations that Oakley retaliated against her at a senior meeting on August 30, 2015 and at another meeting, both attended by Kesterson, when Linder's departure was announced. (SAC ¶¶ 175, 178, 397, 398.) She also proposes factual allegations demonstrating that an assistant coach—Jessica Toocheck—retaliated against her by taking certain specific acts that were known to Kesterson at the time she filed this action.[8] (*See id*. ¶¶ 178, 179, 199, 398.).

Kesterson has not demonstrated good cause under Rule 16 for failing to raise allegations involving facts known to her from the inception of the litigation until well after the dates for amending pleadings and conducting fact discovery had passed. *See Ross*, 567 F. App'x at 306 (citing *Korn*, 382 F. App'x at 450; *Commerce Benefits Grp., Inc.*, 326 F. App'x at 376; *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 537 (6th Cir. 2008) (holding that the plaintiff did not demonstrate good cause where he knew of the facts underlying his motion to amend the complaint for "at least six years prior to his motion" and could have sought leave to plead before the expiration of the deadline set in the court's scheduling order)). Moreover, the Court finds that defendants would suffer prejudice if Kesterson was permitted to further amend her pleadings to add these allegations at this late date, given that fact discovery has closed, and defendants had been defending the action on theories of liability different from those set forth in the newest amended pleading. *See Duggins*, 195 F.3d at 834 ("Allowing amendment at this late stage in the litigation would create significant prejudice to the defendants in having to reopen discovery and

---

[8] In newly proposed paragraph 178, Kesterson alleges that "Coach Toocheck's ongoing support in the wake of Coach Linder's resignation was open and apparent, including at the August 28 meeting when the team was told of the resignation, at the senior meeting on August 30, and on social media where Toocheck posted that her 'heart is absolutely broken for Coach Linder, her former players, her current players and the future flashes . . ..'" Kesterson offers no explanation why she delayed in raising allegations involving meetings that she attended and actions that she admits were "open and apparent[.]"

prepare a defense for a claim quite different from the sex-based retaliation claim that was before the court."); *Bare*, 886 F. Supp. 2d at 607 ("defendant would be prejudiced if it were now required to defend the case based on plaintiff's ever-changing theory").[9]

Even if the Court were to reach an analysis under Rule 15(a)(2), the same considerations would compel the conclusion that the amendment should not be permitted. Kesterson indicates that she is amending to more fully articulate "the precise factual basis for her claims based on facts discovered or confirmed" during discovery (Mot. Amend at 938). Indeed, "when a case proceeds to trial on grounds that have been thoroughly vetted by the parties through discovery, amendments to conform pleadings to those theories are entirely proper." *Kienzle v. Gen. Motors, LLC*, No. 11-11930, 2013 WL 511397, at *6 (E.D. Mich. Feb. 12, 2013). Yet, the amendments Kesterson is proposing are not merely "factual corrections gleaned during discovery."[10] *See, e.g., S.E.C. v. Somers*, No. 3:11-CV-165-H, 2013 WL 4045295, at *4 (W.D. Ky. Aug. 8, 2013). Instead, as set forth above, the proposed amendments represent wholesale changes to the claims previously asserted and would inject entirely new theories of liability into the case. The prejudice in requiring defendants to defend on new theories raised after the close of discovery is evident. *See Kienzle*, 2013 WL 511397, at *6 ("An amendment to a complaint prejudices a party where the amendment will require that party to prepare an additional defense strategy and expend additional resources to defend against new claims.") (citing *Troxel Mfg. Co.*, 489 F.2d at 971).

---

[9] Even if for some unlikely reason Kent State did not require additional discovery to defend against this new theory of liability, Kesterson cannot seriously contend that she would not seek additional discovery—specifically, the very discovery request denied by the magistrate judge, and now by this Court—as the newly-amended pleadings would arguably support such a request.

[10] To be sure, the redline comparison of the FAC and the proposed SAC reflects minor corrections to the facts—such as a correction indicating that Kesterson is now a *former* Kent State student. (Doc. No. 124-2 at 1007, ¶ 2; *see id.* at 1021, ¶¶ 94-95 (showing the replacement of "and" with "&" and "Women's" with "Woman" in job titles). These corrections are unnecessary as they can be addressed on dispositive motions or at trial.

Kesterson's unjustified delay in filing the present motion to amend, based largely on facts known to Kesterson from the beginning of the litigation, and add new theories after the close of discovery, compels denial of the motion under Rule 15(a) for undue delay.[11] *See id.* (citations omitted); *see also Wade*, 259 F.3d at 458-59 ("When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier.") (citing *Duggins*, 195 F.3d at 834).

The Court concludes that Kesterson has not established good cause required for modification of the CMPTO under Rule 16(b), and that an amendment at this late stage in the proceedings would unduly prejudice defendants and cause further delays. Accordingly, the motion to amend is DENIED.

## IV. Conclusion

For all of the foregoing reasons, the magistrate judge's memorandum opinion and order denying Kesterson's request for discovery (Doc. No. 123) is AFFIRMED, and Kesterson's motion for leave to amend (Doc. No. 124) is DENIED.

**IT IS SO ORDERED**.

Dated: May 8, 2018

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

---

[11] To the extent that Kesterson seeks leave simply to include additional facts to support her existing claims, such an amendment is unnecessary as Rule 8 does not require a party to plead every fact known to support her claims. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (Rule 8 does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"); *see also Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, No. 1:07-CV-956, 2008 WL 4590409, at *1 (W.D. Mich. Oct. 9, 2008) (rejecting motion to amend to make the complaint "more precise," noting that "[i]f simply learning additional facts during the course of discovery was a sufficient basis, without more, to amend a complaint, presumably complaints would be amended in virtually every action").