**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAUREN KESTERSON,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 5:16-cv-00298** |
| | : | |
| **v.** | : | **JUDGE SARA LIOI** |
| | : | |
| **KENT STATE UNIVERSITY,** *et al.*, | : | **Magistrate Judge Kathleen Burke** |
| | : | |
| **Defendants.** | : | |

---

**DEFENDANT KAREN LINDER'S**
**MOTION FOR SUMMARY JUDGMENT**

---

Defendant Karen Linder, through the undersigned counsel and pursuant to Fed. R. Civ. P. 56, moves this Court for an order granting her summary judgment on Plaintiff's Amended and Supplemental Complaint with Jury Demand. This Motion is well founded because there are no genuine issues of material fact that would preclude the entry of judgment in Defendant Linder's favor and Defendant Linder is entitled to qualified immunity. A memorandum in support is attached.

Respectfully submitted,

**MICHAEL DEWINE (0009181)**
**Ohio Attorney General**

 /s/ *Lisa M. Critser*
ANTHONY J. FARRIS (0055695)
LISA M. CRITSER (0079262)
Assistant Attorneys General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Telephone:  (614) 644-7250
Facsimile:  (614) 644-7634
anthony.farris@ohioattorneygeneral.gov
lisa.critser@ohioattorneygeneral.gov

*Counsel for Defendant Karen Linder*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ iii

I.     Statement of the Issues and Summary of the Argument ....................................1

II.    Statement of the Facts ........................................................................................2

III.   Standard of Review............................................................................................8

IV.    Law and Argument .............................................................................................9

      A.     Linder is entitled to summary judgment on Kesterson's claim of equal protection deprivation because she does not establish deliberate indifference or "class of one" violations .................................................................................9

           1.   Linder was not deliberately indifference to Kesterson's allegation of sexual misconduct ........................................................................10

           2.   Linder did not treat Kesterson differently than a similarly situated individual with no rational basis .......................................................14

      B.     Linder is entitled to summary judgment on Kesterson's First Amendment claim of prior restraint because Linder did not forbid Kesterson from speaking about her sexual misconduct allegation or require Kesterson to obtain Linder's approval before speaking about it .................................................................17

      C.     Linder is entitled to summary judgment on Kesterson's First Amendment retaliation claim because she cannot demonstrate that she engaged in protect conduct or that there was an adverse action motivated by her conduct ...............19

           1.   Kesterson did not engage in protected conduct .............................................20

           2.   No adverse actions were taken against Kesterson .........................................20

           3.   Kesterson cannot show a causal connection between her protected conduct and the adverse actions .................................................................23

      D.     Linder is entitled to qualified immunity .................................................24

           1.   Qualified immunity is available to Linder because the ministerial duty exception does not apply .................................................................26

           2.   Kesterson cannot show a violation of her constitutional rights or that those constitutional rights were clearly established .................................................28

i

V.      Conclusion .................................................................................................30

Certificate of Compliance with LR 7.1(f) ...................................................unnumbered

Certificate of Service ........................................................................................unnumbered

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. United States,*
  509 U.S. 544 (1993) .............................................................................................17, 19

*Anderson v. Creighton,*
  483 U.S. 635 (1987) .........................................................................................................24

*Bench Billboard Co. v. City of Cincinnati,*
  675 F.3d 974 (6th Cir. 2012) ........................................................................................14

*Benjamin v. Brachman,*
  246 F. App'x 905 (6th Cir. 2007) ................................................................................14

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ...........................................................................................................8

*Chappell v. Montgomery Cnty. Fire Protection Dist. No. 1,*
  131 F.3d 464 (6th Cir. 1997) ........................................................................................20

*Cope v. Heltsley,*
  128 F.3d 452 (6th Cir. 1997) ........................................................................................25

*Stiles ex rel D.S. v. Grainger Cty., Tenn.,*
  819 F.3d 834 (6th Cir. 2016) ........................................................................................10

*Davis v. Monroe Cty. Bd. of Educ.,*
  526 U.S. 629 (1999)....................................................................................................11, 13

*DeCecco v. University of South Carolina,*
  918 F. Supp. 2d 471 (D.S.C. 2013)..............................................................................29

*Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville & Davidson County, Tenn.,*
  274 F.3d 377 (6th Cir. 2001) ........................................................................................17

*Dinkins v. Charoen Pokphand USA, Inc.,*
  133 F. Supp. 2d 1237 (M.D. Ala. 2001) ....................................................................16

*Doe on Behalf of Doe v. Dallas Independent School Dist.,*
  153 F.3d 211 (5th Cir. 1988) ........................................................................................14

iii

*Fachetti v. Bridgewater College*,
    175 F.Supp.3d 627, 638 (W.D. Va. 2016) ...........................................................................13

*Farmer v. Brennan*,
    511 U.S. 825 (1990)...........................................................................................................14

*Frazer v. Temple Univ.*,
    25 F. Supp. 3d 598, 613-14 (E.D. Pa. 2014) .....................................................................12

*Gallagher v. C.H. Robinson Worldwide, Inc.*,
    567 F.3d 263 (6th Cir. 2009) ...............................................................................................9

*Givhan v. Western Line Consol. Sch. Dist.*,
    439 U.S. 410 (1979)...........................................................................................................20

*Goodwin v. City of Painesville*,
    781 F.3d 314 (6th Cir. 2015) .............................................................................................30

*Harbin-Bey v. Rutter*,
    420 F.3d 571 (6th Cir. 2005) .............................................................................................24

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)...........................................................................................................24

*Hidden Village, LLC v. City of Lakewood, Ohio*,
    734 F.3d 519 (6th Cir. 2013) .............................................................................................25

*Hooker v. Wentz*,
    77 F. Supp. 2d 753 (S.D. W. Va. 1999)..............................................................................16

*Hope v. Pelzer*,
    536 U.S. 730 (2002)...........................................................................................................25

*Hudson v. Hudson*,
    475 F.3d 741 (6th Cir. 2007) ........................................................................................26, 27

*Klimik v. Kent Cnty. Sheriff's Dept.*,
    91 F. App'x 396 (6th Cir. 2004) .........................................................................................14

*Kollaritsch v. Mich. State Univ. Bd. of Trustees*,
    No.15-cv-1191, 2017 U.S. Dist. LEXIS 216502 (W.D. Mich. Nov. 2, 2017) .....................13

*Malley v. Briggs*,
    457 U.S. 335 (1986)...........................................................................................................24

*McKenna v. Bowling Green State University*,
    568 F. App'x 450 (6th Cir. 2014) .........................................................................................9

iv

*Mumford v. Zieba*,
    4 F.3d 429 (6th Cir. 1993) ............................................................................25

*Ohio Civil Service Employees Ass'n v. Seiter*,
    858 F.2d 1171 (6th Cir. 1988) .....................................................................25

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ...............................................................................24, 25

*Plumhoff v. Rickard*,
    134 S. Ct. 2012 (2014) ...........................................................................28, 29

*Poe v. Haydon*,
    853 F.2d 418 (6th Cir. 1988) .........................................................................9

*Promotions, Ltd. v. Conrad*,
    420 U.S. 546 (1975) .....................................................................................17

*Ruiz-Bueno v. Scott*,
    639 F. App'x 354 (6th Cir.2016) .................................................................26

*Saucier v. Katz*,
    533 U.S. 194, 201 (2001) .............................................................................24

*Sellers ex rel. Sellers v. Baer*,
    28 F.3d 895 (8th Cir. 1994) ....................................................................26, 28

*Shively v. Green Local Sch. Dist. Bd. of Educ.*,
    579 F. App'x 348 (6th Cir. 2014) ..............................................................9, 10

*Sims v. Med. Ctr. of Baton Rouge, Inc.*,
    No. CIV.A. 96-3371, 1997 WL 436258 (E.D. La. Aug. 1, 1997) .........................16

*Smith v. City of Inkster*,
    644 F. App'x 602 (6th Cir. 2016) .................................................................17

*Soper v. Hoben*,
    195 F.3d 845 (6th Cir. 1999) .........................................................................9

*Speet v. Schuette*,
    726 F.3d 867 (6th Cir. 2013) .......................................................................20

*Stolle v. Kent State Univ.*,
    610 F. App'x. 476 (6th Cir. 2015) .............................................................20, 21

*Thaddeus-X v. Blatter*,
    175 F.3d 378 (6th Cir. 1999) .......................................................................21

*Thomas v. Meharry Med. Coll.*,
   1 F. Supp. 3d 816, 827 (M.D. Tenn. 2014)..........................................................................12

*Torres v. Pisano*,
   116 F.3d 625 (2d Cir. 1997)...............................................................................................16

*Untalan v. City of Lorain*,
   430 F.3d 312 (6th Cir. 2005) .............................................................................................24

*Vill. of Willowbrook v. Olech*,
   528 U.S. 562 (2000)............................................................................................................14

*Walton v. City of Southfield*,
   995 F.2d 1331 (6th Cir. 1993) ...........................................................................................25

*Williams v. Port Huron Sch. Dist.*,
   455 F. App'x 612 (6th Cir. 2012) ......................................................................................10

*Wilson v. Beaumont Ind. Sch. Dist.*,
   144 F. Supp. 2d 690 (E.D. Tex. 2001)...............................................................................13

*Wurzelbacher v. Jones-Kelley*,
   675 F.3d 580 (6th Cir. 2012) .............................................................................................22

*Yoona Ha v. Nw. Univ.*,
   No. 14-cv-00895, 2014 WL 5893292 (N.D. Ill. Nov. 13, 2014) .......................................12

*Young v. Mahoning County, Ohio*,
   418 F. Supp. 2d 948 (N.D. Ohio 2015)..............................................................................10

**Statutes**

42 U.S.C. § 1983........................................................................................................ *passim*

**Other Authorities**

Fed.R.Civ.P. 56(a) ......................................................................................................................8

Fed.R.Civ.P. 56(c) ......................................................................................................................8

Ohio Admin. Code 3342-5-16.2 ..................................................................................................5

Ohio Admin. Code 3342-5-16.2(D)............................................................................................27

Ohio Admin. Code 3342-5-16.2(D)(4) .......................................................................................27

Ohio Administrative Code Chapter 3342 .....................................................................................5

**MEMORANDUM IN SUPPORT**

**I.      Statement of the Issues and Summary of the Argument**

In her First Amended and Supplemental Complaint ("Amended Complaint"), Plaintiff Lauren Kesterson ("Kesterson") asserts three claims against Defendant Karen Linder ("Linder") in her individual capacity pursuant to 42 U.S.C. § 1983: (1) denial of equal protection under the Fourteenth Amendment; (2) violation of free speech under the First and Fourteenth Amendments; and (3) retaliation under the First and Fourteenth Amendments. Specifically, Kesterson alleges that Linder failed to report Kesterson's allegation of sexual misconduct involving Linder's son in violation of university policy; that Linder forbade Kesterson from speaking about her allegation, and; that Linder treated Kesterson with deliberate indifference and retaliated against her as a result of her allegation. These are baseless allegations.  Based upon all of the materials in the record, there are no genuine issues of material fact as to Kesterson's claims against Linder and Linder is entitled to qualified immunity.

First, Kesterson cannot demonstrate that Linder deprived her of equal protection under the Fourteenth Amendment because she does not establish deliberate indifference or "class of one" violations. Kesterson cannot show that Linder acted with deliberate indifference toward Kesterson or that Linder lacked a rational basis for her actions upon learning of Kesterson's allegation of sexual misconduct.

Second, Kesterson also cannot show that Linder deprived her of free speech in violation of her First and Fourteenth Amendment rights by imposing a prior restraint. Kesterson cannot demonstrate that Linder forbade Kesterson from speaking about her sexual misconduct allegation or that Linder required Kesterson to seek Linder's approval prior to speaking about it.

Third, Kesterson cannot establish that Linder retaliated against her in violation of her First and Fourteenth Amendment rights.  Kesterson cannot demonstrate that she engaged in

1

constitutionally protected speech or conduct by discussing her sexual misconduct allegation with Linder, that she suffered an adverse action following her discussion with Linder, or that there is a causal connection between the alleged protected speech or conduct and adverse actions.

Finally, Linder enjoys qualified immunity from Kesterson's claims. Kesterson bears the burden of showing that Linder is not entitled to qualified immunity and she cannot meet this burden. Kesterson cannot show a violation of her constitutional rights by Linder and, even if she did, Kesterson cannot show the constitutional right is clearly established.

Thus, Defendant Karen Linder respectfully requests that her Motion for Summary Judgment be granted because she is entitled to judgment as a matter of law.

## II.     Statement of the Facts

Kesterson attended Kent State University ("KSU"), a public university, beginning in August 2012. (Kesterson Dep. 25-26; KSU Ans., Doc. 25 at 264, ¶2-3; Linder Ans., Doc.38 at 573, ¶2-3.)[1] Kesterson, along with her twin sister Chloe ("Chloe"), were recruited to play softball at KSU by Linder. (Linder Dep. 52-54.) Linder was the head coach of the KSU softball team from 1996 to August 2015. (MSJ Ex.1, Linder Declaration, ¶2.)[2] Both Kesterson and Chloe played softball for Linder during their freshman, sophomore and junior years at KSU. (Kesterson Dep. 82-83, 116; Chloe Dep. 57-58, 88, 119; MSJ Ex.2.)[3] Kesterson played in the infield at short stop and second base and Chloe played in the outfield. (Kesterson Dep. 202; Chloe Dep. 180; Linder Dep. 155; MSJ Ex.2.)[4]

---

[1] The transcripts of all referenced depositions and deposition exhibits have been filed with the Court by Defendant KSU. All referenced deposition excerpts are attached hereto as Linder MSJ Exhibits 7-16. All are referred to as ([Deponent Name] Dep. [page no.]). Kesterson's deposition excerpts are attached as Linder MSJ Ex.8.
[2] All referenced exhibits are attached as Linder MSJ Exhibits 1-4.
[3] Chloe Kesterson's deposition excerpts are attached as Linder MSJ Ex.12.
[4] Linder's deposition excerpts are attached as Linder MSJ Ex.7.

Linder's son, Tucker (hereinafter "Tucker"), was also a freshman student athlete at KSU in fall 2012. (Kesterson Dep. 36, Doc. 38 at 574, ¶24.) Kesterson and Tucker became friends during fall 2012. (Kesterson Dep. 42.) In November 2012, Kesterson and Tucker engaged in minor intimacies in Kesterson's dorm room. (*Id*. at 43, 45-46.) Subsequently, on December 7, 2012, Kesterson and Tucker had a sexual encounter, which Kesterson now characterizes as rape. (*Id*. at 67.)[5] That evening, Kesterson and Tucker made arrangements to meet up and Kesterson met Tucker at his dorm room. (*Id*. at 49-51.) Kesterson and Tucker then returned to Kesterson's dorm room, where their sexual encounter occurred. (*Id*. at 59-60, 62). Following the sexual encounter with Tucker, Kesterson did not tell anyone about it for almost ten months. (*Id*. at 76-79, 85, 98-99.) Although Kesterson saw Tucker on campus, she did not have any contact with him for the remainder of the school year. (*Id*. at 81-82, 85.)

The official season for softball occurs in the spring. (*Id*. at 202.) During her freshman year, in spring 2013, Kesterson started at the shortstop position because the player slotted to start had quit after the 2012 fall season. (Linder Dep. 55-56.) Kesterson started and appeared in almost all of the games that season. (Kesterson Dep. 201-202; MSJ Ex. 2.)

Kesterson returned to KSU to begin her sophomore year in August 2013. At the beginning of that school year, Kesterson attended a party at Tucker's apartment. (Kesterson Dep. 187; Cregan Dep. 125-126.)[6] Following the party at Tucker's apartment, Kesterson and her boyfriend, Michael Mazzan ("Mazzan"), encountered Tucker at a party hosted by some of Kesterson's softball teammates in September. (Kesterson Dep. 98-99, 187.) During the party, there was a confrontation between Tucker and Kesterson's boyfriend. (*Id*. at 98-99.) After the

---

[5] Kesterson liberally uses the term "rape" throughout her filings and deposition. However, the record is devoid of any evidence that Tucker was criminally convicted of rape, arrested for rape or even found by a preponderance of the evidence to have engaged in nonconsensual sex with Plaintiff under an internal Title IX proceeding.

[6] Nicolette ("Nicki") Cregan's transcript excerpts are attached as Linder MSJ Ex.10.

party, Kesterson told Mazzan about the alleged sexual misconduct by Tucker. (*Id*. at 98-99.) Kesterson also told her twin Chloe and her roommate, close friend and softball teammate Nicki Cregan ("Cregan") about the alleged sexual misconduct by Tucker. (Kesterson Dep. 101-103; Cregan Dep. 18-21.) Before going home for Christmas break, Kesterson told her parents about the alleged sexual misconduct. (Kesterson Dep. 104.)

Over Christmas break, Kesterson set up an appointment with a therapist, Susan Fenner ("Fenner"), and told Fenner about the alleged sexual misconduct. (*Id*. at 112, 115.) Kesterson also told her high school ex-boyfriend, Riley Ayres, and her friend from home, Conner Boyce, about the alleged sexual misconduct over Christmas break. (*Id*. at 95-96, 110, 148.)

Kesterson returned to KSU for spring semester of her sophomore year and played softball. (*Id*. at 116.) Kesterson again played shortstop and started or appeared in almost all of the games that season. (*Id*. at 202; MSJ Ex. 2.) At the end of spring semester, Kesterson became emotional in a team meeting and thanked her teammates for helping her deal with her issues. (Kesterson Dep. 192; Linder Dep. 87.) Although she did not specifically state it, Kesterson was referring to the alleged sexual misconduct by Tucker. (Kesterson Dep. 192.) At that time, Kesterson's teammates Alyssa Frankenfield, Ariel Patterson, Dani Ramos and possibly Kim Kirkpatrick knew of the alleged sexual misconduct in addition to Chloe and Cregan. (*Id*. at 192-193.) Afterwards, Coach Linder asked Chloe and Cregan whether something was wrong with Kesterson. (Linder Dep. 89-90; Cregan Dep. 57.) They responded that Linder would need to ask Kesterson. (Cregan 57.)

Following the team meeting and ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



It was the first time in Linder's eighteen year career at Kent State, and only the second time in Linder's entire thirty-three year coaching career, that a player had reported sexual assault to her. (Linder Dep. 73-74, 311.)

KSU policy requires that employees report instances of sexual misconduct. Ohio Admin. Code 3342-5-16.2.[7]

Linder met with Kesterson for Kesterson's exit meeting. (Linder Dep. 75.) Linder and Kesterson talked about softball and how the year went. (Kesterson Dep. 189.) Then, Linder asked if Kesterson was okay and whether something had happened to make Kesterson so emotional at the team meeting. (*Id.*; Linder Dep. 92.) In response, Kesterson revealed that she had been sexually assaulted during her freshman year. (*Id.*) Linder asked Kesterson who it was and Kesterson responded that she did not want to tell Linder who it was. (Kesterson Dep. 189-190.) Because she knew of the flirtation between her son and

---

[7] KSU policies are "rules by reference" under Ohio Administrative Code Chapter 3342, and can be found at https://www.kent.edu/policyreg. Ohio Admin. Code 3342-5-16.2 is attached as MSJ Ex. 6.

Kesterson during their freshmen year, Linder then asked if it was Tucker and Kesterson said yes. (*Id*. at 122-123, 190; Linder Dep. 92-93.) Kesterson and Linder both cried. (Kesterson Dep. 190; Linder Dep. 93.)

Linder asked Kesterson if she wanted to press criminal charges against Tucker. (Doc. 38 at 577, ¶ 67; Kesterson Dep. 123.) Kesterson told Linder that she did not want to press charges against Tucker. (*Id*.) Linder also asked Kesterson who knew about the alleged sexual misconduct. (Kesterson Dep. 123, 190; Linder Dep. 93.) Kesterson told Linder that Kesterson's parents, Chloe and Cregan knew about the alleged sexual misconduct. (Kesterson Dep. 125; Linder Dep. 93-94.) Linder then told Kesterson it would be better if they kept it between the people who already knew about it and not to tell anyone else. (Kesterson Dep. 190; Linder Dep. 93.) Linder did not tell Kesterson that she could not talk about the alleged sexual misconduct. (Kesterson Dep. 190.) After the May 2014 exit meeting, Linder did not make the statement again. (*Id*. at 191.)   Following Kesterson's exit meeting, Linder did not tell Kittel about Kesterson's allegation of sexual misconduct. (Linder Dep. 106-107.) It was Linder's impression that Kesterson did not want to report the alleged sexual misconduct. (*Id*. at 305.)

During the exit meeting, Linder said she would do whatever she could to help Kesterson and that she loved Kesterson. (Doc. 20 at 211, ¶71; Doc. 38 at 577, ¶71.) Linder asked if Kesterson would like to meet with Tucker. (Kesterson Dep. 191.) Kesterson ultimately declined to meet with Tucker. (*Id.*; MSJ Ex.3, 1059.) After Kesterson declined, Linder did not ask Kesterson again to meet with Tucker. (Kesterson Dep. 191.) Immediately upon leaving the exit meeting, Kesterson told Assistant Coaches Jessica Bachkora ("Bachkora") and Mandee Luers ("Luers"), who were standing outside of Linder's office, that she had been sexually assaulted. (*Id*. at 151-153, 193.)

Following Kesterson's exit meeting, Linder called Kesterson's mother. (Linder Dep. 152-153.) Linder apologized for what Kesterson was going through and stated she wanted to help Kesterson. (*Id*.) Linder's main concern was that Kesterson receive counseling if she needed it. (*Id*. at 153.) Linder checked in with Kesterson throughout the summer. (*Id*.; Kesterson Dep. 194; MSJ Ex.3, 1059-1066.) Additionally, Linder notified Kesterson that Tucker would not be returning to KSU. (Kesterson Dep. 194.)

Kesterson returned to KSU to begin her junior year in August 2014. Linder asked how Kesterson was doing when Linder first saw Kesterson back at school and Kesterson said fine. (Linder Dep.153.) Linder also informed Kesterson that Deborah Keith ("Keith"), an academic advisor and life coach at KSU, would be available to her even though Keith was retiring. (*Id*. at 154- 155.) Kesterson had a great fall softball season. (*Id*. at 155.) Kesterson played both shortstop and second base and did well at second base. (*Id*.) Like previous years, Linder hosted a team Christmas party in her home in December. (*Id*. at 312-313.) Tucker was not there. (Cregan 65.) Linder's home had five or six photographs of Tucker displayed, including a couple of life-sized images on the basement walls. (Linder Dep. 165-166.) Linder also kept photos of Tucker in her office. (*Id*. at 166-167.)

In spring 2015, Kesterson was moved from the starting shortstop position to the starting second base position because an incoming freshman performed better than Kesterson at shortstop and Kesterson played second base very well. (Linder Dep. 171-172; Oakley Dep. 379.)[8] At one point during the season, Kesterson was replaced at second base due to her batting average at the recommendation of Assistant Coaches Bachkora and Eric Oakley ("Oakley"). (Oakley Dep. 98-101, 380, 384, 387-388). Kesterson soon returned to the starting lineup at second base due to

---

[8] Eric Oakley's deposition excerpts are attached as Linder MSJ Ex.14.

another player's injury. (*Id.* at 387-388.) Kesterson played in a majority of the games in 2015. (Kesterson Dep. 203; MSJ Ex.2.)

Throughout Kesterson's junior year, she and Linder communicated by text about softball related matters and grades. (Kesterson Dep. 205-207; MSJ Ex.3, 1067-1088.) ████████

████████████████████████████████████████

████████████████████████████████████

In August 2015, when Kesterson returned for her senior year, she contacted KSU's Title IX office (Kesterson Dep. 163.) Kesterson met with Erin Barton from KSU's Title IX office on August 24, and filed a Title IX complaint against Linder. (*Id.* at 167, 169.) Within four days of Kesterson's complaint, on August 28, Linder was given the option to resign or be terminated from KSU. (Linder Dep. 224-225.) Linder chose to resign. (*Id.* at 226.)

Following her resignation, Linder gave an interview to Allen Moff with the Ravenna Record-Courier. (*Id.* at 264; MSJ Ex. 4.) Linder told Moff that "philosophical differences" prompted her resignation from KSU. (Linder Dep. 265.) Linder also attended two KSU softball games and KSU's Alumni Weekend during fall 2015 after her resignation. (*Id.* at 269-270.)

## III.    Standard of Review

Fed.R.Civ.P. 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moreover, "[t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While a party cannot obtain summary judgment if there is a genuine dispute of a material fact, "[a] dispute is 'genuine' only if based on evidence upon which a reasonable jury

8

could return a verdict in favor of the non-moving party." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009).

## IV.    Law and Argument

In her Amended Complaint, Kesterson asserts three claims against Linder in her individual capacity pursuant to 42 U.S.C. § 1983: (1) denial of equal protection under the Fourteenth Amendment (Claim 2); (2) violation of free speech under the First and Fourteenth Amendments (Claim 3); and (3) retaliation under the First and Fourteenth Amendments (Claim 4). The claims will be addressed in this order. As is detailed below, even considering the evidence adduced herein in a light most favorable to Plaintiff, she cannot demonstrate any genuine dispute of material fact. Additionally, Defendant Linder is entitled to qualified immunity. Thus, summary judgment in Defendant Linder's favor should be granted.

To state a claim under § 1983, Kesterson must establish that a person acting under color of law deprived her of a federal right. *Soper v. Hoben*, 195 F.3d 845, 852 (6th Cir. 1999). A state actor may only be held liable under § 1983 for her "active, unconstitutional behavior." *McKenna v. Bowling Green State University,* 568 F. App'x 450, 460 (6th Cir. 2014). A person cannot be held liable under § 1983 for mere failure to act. *Poe v. Haydon,* 853 F.2d 418 (6th Cir. 1988) (supervisors who did not participate in sexual harassment but were merely aware of it and failed to act were not liable under § 1983).

### A.    Linder is entitled to summary judgment on Kesterson's claim of equal protection deprivation because she does not establish deliberate indifference or "class of one" violations.

"The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 356 (6th Cir. 2014) (citation omitted). Kesterson alleges Linder

9

acted with deliberate indifference to Kesterson's allegation of sexual misconduct and Linder treated Kesterson differently than another softball player who reported sexual misconduct with no rational basis. (Doc. 20 at 244, ¶ 302-304; Doc. 29 at 388-397.) [9]

### 1. Linder was not deliberately indifferent to Kesterson's allegation of sexual misconduct.

The Sixth Circuit has recognized that a plaintiff may prove an equal protection violation by showing a defendant's deliberate indifference to allegations of student-on-student harassment. *Shively*, 579 F. App'x at 356-357 (citations omitted). The deliberate indifference standard used for proving a § 1983 equal protection violation in peer harassment cases is substantially the same as Title IX's deliberate indifference standard. *Stiles ex rel D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 852 (6th Cir. 2016) (citation omitted). A plaintiff must first offer evidence that she was subjected to discriminatory peer harassment and then must offer evidence that school officials responded to the discriminatory peer harassment with deliberate indifference. *Id*. (citations omitted). "A plaintiff may demonstrate deliberate indifference only where "the response to [allegations of misconduct] or lack thereof is 'clearly unreasonable in light of the known circumstances.'" *Williams v. Port Huron Sch. Dist.*, 455 F. App'x 612, 618 (6th Cir. 2012) (citing *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000) (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)).

Here, Kesterson cannot demonstrate that Linder's response was deliberately different in response to Kesterson's allegation of sexual misconduct. Linder was not notified of Kesterson's allegation until 17 months after the sexual encounter occurred. Upon being told by Kesterson

---

[9] Ordinarily, a plaintiff alleging an Equal Protection deprivation must allege a state actor intentionally discriminated against her because of her membership in a protected class. *Young v. Mahoning County, Ohio*, 418 F. Supp. 2d 948, 958 (N.D. Ohio 2015) (citing *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). As noted by this Court, "Plaintiff does not dispute the absence of allegations that she was treated differently than similarly situated male students." (Memorandum Opinion, Doc 34 at 499.) Thus, Kesterson does not allege that Linder treated Kesterson adversely based on her membership in any recognized class.

that her son Tucker sexually assaulted Kesterson, Linder demonstrated only empathy toward Kesterson. Both Linder and Kesterson were in tears. (Kesterson Dep. 190; Linder Dep. 93.) Linder told Kesterson that she was "[Linder's] kid, too" and apologized to Kesterson. (*Id*.) Linder also asked Kesterson if she wanted to press criminal charges against Tucker. (Doc. 38 at 577, ¶67; Kesterson Dep. 123.) Linder said she loved Kesterson and would do whatever she could to help Kesterson. (Doc. 20 at 211, ¶71; Doc. 38 at 577, ¶71.)

Although she had no obligation or authority to remedy the alleged misconduct, purge KSU of the offending student or take particular disciplinary action, Linder took steps to provide Kesterson with support. *See Davis*, 526 U.S. at 648. (Linder Dep. 284-286.) Following Kesterson's exit meeting, Linder called Kesterson's mother, apologized to her, and stated she wanted to help. (Linder Dep. 152-153.) Throughout the following summer, Linder checked in with Kesterson and notified her that Tucker would not be returning to KSU. (*Id.*; Kesterson Dep. 194; MSJ Ex.3, 1059-1066.) Kesterson believed that Linder was sincere throughout this time. (Kesterson Dep. 227-228.) When Kesterson returned in the fall of 2014, Linder checked in with her and let Kesterson know that Keith, a KSU advisor and life coach, would still be available to her although Keith was retiring. (Linder Dep.153-155.)

Additionally, Linder was notified of Tucker's conduct toward Kesterson well after it had ceased and there remained no ongoing threat to Kesterson. Following their sexual encounter in December 2012, Kesterson and Tucker had very little contact with each other. They did not have any contact during the remainder of their freshman year. (Kesterson Dep. 85.) In the fall of their sophomore year, Kesterson attended a party where her boyfriend and Tucker had a confrontation. (*Id*. at 98-99.) Following Kesterson's exit meeting in May 2014, Tucker sent Kesterson a text. (Linder Dep. 145.) Then, Tucker did not attend KSU during Kesterson's junior year. (*Id*. at 151-

11

152; Kesterson Dep. 194.)

Courts have dismissed deliberate indifference claims under Title IX, which has substantially the same standard, when the offending conduct had ceased yet the plaintiff claimed she was aggrieved by the harasser/assailant's mere presence on campus. *Yoona Ha v. Nw. Univ.*, No. 14-cv-00895, 2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014) (plaintiff alleged she had "occasional glimpse" of assailant at university and knowledge he was on campus "caused her considerable grief"); *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 613-14 (E.D. Pa. 2014)(dismissing Title IX claim where plaintiff alleged harasser "followed her, sat outside her dormitory, and...stood directly beside her [in the cafeteria] and stared at her while she was having a conversation with a fellow student"); *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 827 (M.D. Tenn. 2014) ("[B]ecause plaintiff did not continue to experience sexual harassment once he put defendant on notice of [his harasser's] conduct, there is no basis to find defendant's response to plaintiff's sexual harassment report amounted to deliberate indifference."). The circumstances of this case pale in comparison.

Despite Kesterson's assertions, Linder did not mandate Kesterson's silence, attempt to pressure Kesterson into speaking with Tucker, orchestrate a cover up of Kesterson's allegation, or treat Kesterson any differently. As discussed more fully below, Linder did not tell Kesterson that she could not talk about her allegation; Linder merely expressed her preference once, in May 2014, that Kesterson keep it between the people that already knew. (Kesterson Dep. 190; Linder Dep. 93.) *See* Section IV(B), *supra*. Linder never mentioned her preference again. (Kesterson Dep. 191.) Linder also did not repeat her suggestion that Kesterson to meet with Tucker after Kesterson declined to do so. (*Id.*) Further, Linder did not orchestrate a cover up of Kesterson's allegation. Had she wanted to cover up Kesterson's allegation, Linder would not have called

12

Kesterson's mother, been concerned about Kesterson receiving counseling or notified Kesterson of Keith's availability despite Keith's retirement. Finally, nothing suggests that Linder treated Kesterson substantially different after learning of Kesterson's allegation. (Linder Dep. 309; Duffy Dep. 50; Tilton Dep. 45-46; Warren Dep. 39.)[10] They communicated by text about softball related matters and grades. (MSJ Ex.3, 1067-1088.)

In light of the known circumstances, nothing about Linder's response suggests that it was clearly unreasonable and thus, deliberately indifferent. The only thing Linder did not do was follow KSU policy and report Kesterson's allegation of sexual misconduct pursuant to KSU's policy. Failure to follow a university policy does not establish deliberate indifference. *Kollaritsch v. Mich. State Univ. Bd. of Trustees*, No.15-cv-1191, 2017 U.S. Dist. LEXIS 216502, *23 (W.D. Mich. Nov. 2, 2017); *Fachetti v. Bridgewater College*, 175 F.Supp.3d 627, 638 (W.D. Va. 2016). That Linder did not respond to Kesterson's allegation of sexual misconduct in the manner in which Kesterson determined (long after May 2014) was required, does not mean Linder was deliberately indifferent. The deliberate indifference standard does not mean victims have a right to a particular remedial demand. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648-49 (1999). Further, under the deliberate indifference standard, there is no legal requirement of perfection. *Wilson v. Beaumont Ind. Sch. Dist.*, 144 F. Supp. 2d 690, 694 (E.D. Tex. 2001). Kesterson's sexual misconduct allegation was only the second one of Linder's 18-year career at KSU, occurring within days of the first one of her KSU career, and only the third one of Linder's entire 33-year coaching career. (Linder Dep. 73-74, 311.)

Linder believed that Kesterson did not want to report the alleged sexual misconduct. (*Id.* at 305.) At best, this shows Linder was negligent. However, a plaintiff must show more than

---

[10] Michele Duffy's, Shelbi Tilton's and Erika Warren's deposition excerpts are attached as Linder MSJ Ex.11, 15 and 16, respectively.

13

mere negligence to establish deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835 (1990); *see also Doe on Behalf of Doe v. Dallas Independent School Dist.*, 153 F.3d 211, 219 (5th Cir. 1988) ("[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference").

### 2. Linder did not treat Kesterson differently than a similarly situated individual with no rational basis.

The Supreme Court has "recognized that the Equal Protection Clause gives rise to a cause of action for a "class of one." *Klimik v. Kent Cnty. Sheriff's Dept.*, 91 F. App'x 396, 400 (6th Cir. 2004) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To present a "class of one" equal protection claim, a plaintiff must demonstrate "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564 (citations omitted). To be similarly situated, a plaintiff must compare herself to someone who is similarly situated in all relevant respects. *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012). "Where a plaintiff succeeds in identifying similarly-situated individuals, plaintiff must also (1) refute every conceivable basis that might support the government action, or (2) demonstrate that the challenged action was motivated by animus or ill-will." *Benjamin v. Brachman*, 246 F. App'x 905, 927 (6th Cir. 2007)(citations omitted).

Kesterson identifies ▮▮▮▮▮▮▮▮ as the similarly situated individual that Linder intentionally treated differently with no rational basis.[11] ▮▮▮▮▮▮▮▮▮▮▮▮



similarly situated, Linder did not treat them differently in responding to their allegations of sexual misconduct. For each woman, Linder gave her the opportunity to decide what she wanted to do and abided by her choices. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ With Kesterson, Linder asked if it was Tucker and Kesterson confirmed his identity. (Kesterson Dep. 122-123, 190; Linder Dep. 92-93.) Linder asked Kesterson if she wanted to press criminal charges and Kesterson said no. (Doc. 38 at 577, ¶ 67; Kesterson Dep. 123.) Linder took this to mean that Kesterson did not want to report her allegation of sexual misconduct. (Linder Dep. 105-106, 305.)

Even if it is found that Linder treated Kesterson ████████ differently, Kesterson cannot show that there was no rational basis for the difference in treatment because she cannot refute every conceivable basis that might support Linder's actions or demonstrate Linder's actions were motivated by animus or ill-will. There are a number of reasons that support Linder's response to Kesterson's sexual misconduct allegation as compared to Linder's response to ████████ ████████.

Kesterson waited almost 17 months before revealing her sexual misconduct allegation to Linder in response to a direct inquiry. (Kesterson Dep. 76, 189; Linder Dep. 92.) Linder honestly believed that Kesterson did not want to report her sexual misconduct allegation. (Linder Dep. 305.) Even Chloe, Kesterson's twin and best friend, believed that Kesterson did not want to report it. (Kesterson Dep. 15; Chloe Dep. 107.) Civil rights law is respectful of victims' rights to opt not to have their complaints investigated. In the Title VII sexual harassment context, courts

████████████████████████████████████████████████.

15

recognize that a supervisor acts rationally when she respects an employee's desire for confidentiality. *Sims v. Med. Ctr. of Baton Rouge, Inc.*, No. CIV.A. 96-3371, 1997 WL 436258, * 4 (E.D. La. Aug. 1, 1997) (supervisor "took prompt, remedial action as a matter of law by respecting [employee's] requests for confidentiality"); *Torres v. Pisano*, 116 F.3d 625, 639 (2d Cir. 1997) (supervisor behaved reasonably in honoring employee's request for confidentiality and failing to act immediately). Similarly, employers are not faulted for complying with employees' requests that an employer refrain from acting while the employee attempts to resolve the issue herself. *Dinkins v. Charoen Pokphand USA, Inc.*, 133 F. Supp. 2d 1237, 1252 (M.D. Ala. 2001)." [T]he law will not presume that persons protected by Title VII cannot make reasonable decisions for themselves about how best to proceed with their harassment claims." *Hooker v. Wentz*, 77 F. Supp. 2d 753, 757-58 (S.D. W. Va. 1999).

Linder was trying to respect Kesterson's privacy. (Linder Dep. 287-288.) Linder's main concern was that Kesterson receive counseling and was informed that Kesterson had. (Linder Dep. 153.) That was how Linder handled the only other sexual assault allegation in her almost 33 year career outside of Kesterson's ███████ allegations. (*Id*. at 74.)

Further, nothing suggests that Linder's response to Kesterson's allegation of sexual misconduct were motivated by animus or ill-will.  As demonstrated previously, Linder showed only empathy toward Kesterson in responding to her sexual misconduct allegation. *See* Section IV(A)(1), *supra*. Even Kesterson believed that Linder's response was sincere. (Kesterson Dep. 227-228.)

Lastly, to the extent that Kesterson is alleging Linder violated the Equal Protection Clause by retaliating against her for protected activity, her claim fails.[12] The Sixth Circuit recently reiterated that retaliation claims cannot be brought under the Equal Protection Clause.

---

[12] Kesterson's allegation of First Amendment retaliation is discussed in Section IV(C), *supra*.

*Smith v. City of Inkster*, 644 F. App'x 602, 611 (6th Cir. 2016).

>   **B.** **Linder is entitled to summary judgment on Kesterson's First Amendment claim of prior restraint because Linder did not forbid Kesterson from speaking about her sexual misconduct allegation or require Kesterson to obtain Linder's approval before speaking about it.**

The Supreme Court has defined a prior restraint as "an administrative or judicial order forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States,* 509 U.S. 544, 549 (1993). In other words, a prior restraint exists "when speech is conditioned upon the prior approval of public officials." *Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville & Davidson County, Tenn.,* 274 F.3d 377, 391 (6th Cir. 2001). The doctrine of prior restraint does not apply when the speaker is faced with post-publication punishment. *Alexander,* 509 U.S. at 553-54.

The elements of prior restraint are: (1) one who seeks to exercise First Amendment rights is required to apply to the government for permission; (2) the government is empowered to determine whether the applicant should be granted permission on the basis of a review of the content of the proposed expression; (3) approval is dependent upon the government's affirmative action; and (4) approval is not a routine matter, but involves an examination of the facts, an exercise of judgment, and the formation of an opinion. *See Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975) (citation omitted).

Kesterson alleges that Linder imposed a prior restraint upon her by forbidding Kesterson from speaking about her allegation of sexual misconduct and conditioning Kesterson's continued participation in the softball program upon her silence. (Doc. 20 at ¶ 318). Specifically, Kesterson alleges that, during Kesterson's May 2014 exit meeting, Linder said "it would be better if we kept it between the people who already knew about it and not to tell anyone else." (Kesterson Dep. 190; Linder Dep. 93.) Linder did not tell Kesterson that she could not talk about the alleged

17

sexual misconduct. (Kesterson Dep. 190.) After the May 2014 exit meeting, Linder did not make the statement again. (*Id*. at 191.)

Linder's statement did not impose a prior restraint upon Kesterson. Despite Kesterson's contention, Linder's statement did not forbid Kesterson from speaking about the alleged sexual misconduct or require Kesterson to obtain Linder's approval prior to speaking about the alleged sexual misconduct. Linder merely expressed her preference that Kesterson keep it between the people that already knew. Furthermore, Kesterson spoke of the alleged sexual misconduct despite Linder's comment. Immediately after leaving the May 2014 exit meeting with Linder in which Linder made the statement, Kesterson told Assistant Coaches Bachkora and Luers, who were standing outside of Linder's office, about the alleged sexual misconduct. (Kesterson Dep. 151-153, 193.) Kesterson also told Keith, a KSU academic advisor and life coach, and possibly Kim Kirkpatrick, a softball teammate, about the alleged sexual misconduct. (*Id*. at 151, 153-155, 179-180, 193-194.) In fall 2014, Kesterson told Heather Adams, a KSU employee, about the alleged sexual misconduct. (*Id*. at 157.)

Additionally, as of her May 2014 exit meeting, Kesterson had already spoken about the alleged sexual misconduct with a number of people – her ex-boyfriend Michael Mazzan (*Id*. at 98-100), her sister Chloe (*Id*. at 101), her parents (*Id*. at 104), her therapist Susan Fenner (*Id*. at 115), her high school ex-boyfriend Riley Ayers (*Id*. at 95-96, 110), her roommate and softball teammate Nicki Cregan (*Id*. at 101), other softball teammates – Alyssa Frankenfield, Ariel Patterson, and Dani Ramos (*Id*. at 192), her high school friend Connor Boyce (*Id*. at 148), her current boyfriend Connor Simonetti and his parents (*Id*. at 193).

If Linder wanted Kesterson to keep silent regarding the alleged sexual misconduct, Linder would not have encouraged Kesterson to seek counseling to help deal with the alleged

18

sexual misconduct or followed up with Mrs. Kesterson about Kesterson receiving counseling. (Linder Dep. 110, 111, 153, 154.) Presumably, counseling would involve talking about the alleged sexual misconduct. If Linder wanted Kesterson to remain silent about the alleged sexual misconduct, Linder also would not have suggested to Kesterson that Deborah Keith, a KSU academic advisor and life coach, would still be available to Kesterson although Keith was retiring. (*Id*. at 154.) As with counseling, presumably Kesterson could have spoken with Keith about the alleged sexual misconduct. At the time, Linder was not aware that Kesterson had received counseling or spoken with Keith. (*Id*. at 94, 155-156; Kesterson Dep. 125, 153-155, 179-180, 194.)

Finally, although Linder never stated that Kesterson would be punished for speaking about the alleged sexual misconduct, Kesterson's main concern seemed to be punishment for speaking about the alleged sexual misconduct. (Kesterson Dep. 134-136.) Kesterson had the impression that she had to remain silent to keep her spot on the team and was afraid that if she spoke about the alleged sexual misconduct, she would be kicked off the softball team and have her scholarship taken away. (*Id*.) This impression is not supported by any evidence. Also, Kesterson remained on the softball team following her exit meeting with Linder. (*Id*. at 203; Linder Dep. 155.) However, the doctrine of prior restraint does not apply when the speaker is faced with post-publication punishment. *Alexander,* 509 U.S. at 553-54.

   **C.    Linder is entitled to summary judgment on Kesterson's First Amendment retaliation claim because she cannot demonstrate that she engaged in protected conduct or that there was an adverse action motivated by her conduct.**

A First Amendment retaliation claim entails the following prima facie case: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3)

there is a causal connection between elements one and two, that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Stolle v. Kent State Univ.*, 610 F. App'x. 476, 482-483 (6th Cir. 2015) (citing inter alia *Benison v. Ross,* 765 F.3d 649, 658 (6th Cir. 2014)). Here, Kesterson cannot establish a prima facie case of retaliation.

### 1.  Kesterson did not engage in protected conduct.

Kesterson cannot establish the first element of the prima facie case for First Amendment retaliation because she did not affirmatively speak about her allegation of sexual misconduct. Instead, during a routine exit meeting with Linder in May 2014, Kesterson responded to a direct inquiry from Linder about whether something had happened to make Kesterson so emotional at an earlier team meeting. (Kesterson Dep. 189; Linder Dep. 92.) Kesterson then indicated that she did not want further action taken. (Kesterson Dep. 123; Doc. 38 at 577, ¶67.) Kesterson merely responded to a question; she did not "lodge a Title IX complaint" or "make a report." Thus, Kesterson's response does not rise to the high level of speech and is not constitutionally protected, in contrast to other cases in which the plaintiff sought action. *See Givhan v. Western Line Consol. Sch. Dist.,* 439 U.S. 410 (1979) (plaintiff-teacher went to principal and made "demands"); *Chappell v. Montgomery Cnty. Fire Protection Dist. No. 1,* 131 F.3d 464, 579 (6th Cir. 1997) (plaintiff complained publicly about financial practices of public employer); *Speet v. Schuette,* 726 F.3d 867 (6th Cir. 2013) (plaintiffs engaged in soliciting money).

### 2.  No adverse actions were taken against Kesterson.

Even assuming she engaged in protected conduct, which she did not, Kesterson cannot establish the second element of the prima facie case because no adverse actions were taken against her. To constitute an adverse action, a plaintiff must show that the actions would chill or silence a person of ordinary firmness from future First Amendment activities. *Stolle*, 610 Fed.

20

App'x at 483 (citations omitted). This is an objective inquiry. *Id.* (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)).

Certain threats or deprivations are so de minimis that they do not rise to the level of constitutional violations and this standard is intended to weed out inconsequential actions. *Thaddeus-X* at 398. "[A]s §1983 is a tort statute, it is necessary that an injury have occurred, for it 'trivialize[s] the *First Amendment* to allow plaintiffs to bring . . . claims for *any* adverse action[,] no matter how minor.'" *Stolle* at 483 (citation omitted).

Kesterson claims the following adverse actions beginning in her junior year: (1) Linder was indifferent, less warm and more distant and unconcerned with Kesterson's feelings than in previous years; (2) Linder required Kesterson to attend a Christmas party in her home where pictures of Tucker were displayed; (3) Linder told Kesteron not tell anyone about the alleged sexual misconduct and conditioned Kesterson's continued participation in softball on her silence; (4) Linder transferred Kesterson from the starting shortstop position to the second base position and briefly benched Kesterson; and (5) Linder made comments about "philosophical differences" published in a newspaper article as explanations for her resignation from KSU. (Kesterson Dep. 194-200, 221-222.) Despite Kesterson's assertions, none of these constitute adverse actions.

Although Kesterson claims Linder was more indifferent and less warm during her junior year, this is not shown by the evidence. There was no apparent change in Linder's behavior toward Kesterson during her junior year according to some of Kesterson's teammates. (Duffy Dep. 50; Tilton Dep. 45-46; Warren Dep. 39.) Further, Linder communicated with Kesterson by text regarding grades and softball, including messages such as "Awesome! So proud of you!! That is so wonderful." and "Great day today. Very happy for you! Congrats on your HR!", as

███████████████████████████████████████████████████████████████; MSJ

Ex.3, 1067-1088.) Cregan, Kesterson's roommate and close friend, only noted that there was less communication between Linder and Kesterson and did not believe Linder was vindictive toward Kesterson. (Cregan Dep. 61-63.) Kesterson's twin Chloe merely stated that Linder was "agitated and upset" and "didn't have patience for [Kesterson] in her emotional state." (Chloe Dep. 185-186.) In sum, Kesterson's perception of Linder's indifference is not rooted in fact and, even if it was, these are the types of de minimis or inconsequential actions that the standard is intended to screen out. *See Wurzelbacher v. Jones-Kelley,* 675 F.3d 580, 584 (6th Cir. 2012) (finding inconsequential emotional harms do not support a finding of adverse action). Kesterson's complaint about attending the 2014 Christmas party where pictures of Tucker were displayed also falls into this category.

As previously discussed, Linder did not tell Kesterson that she could not talk about the alleged sexual misconduct. (Kesterson Dep. 190.) *See* Section IV(B), *supra*. On one occasion, Linder expressed her preference that Kesterson keep it between the people that already knew. After the May 2014 exit meeting, Linder did not make the statement again. (*Id*. at 191.) Further, Linder never stated that Kesterson would be punished for speaking about the alleged sexual misconduct (*Id*. at 135-136.)  An action that did not occur cannot be an adverse action.

Kesterson also claims that her transfer from shortstop to second base and brief benching was an adverse action. However, the record establishes this was a "run of the mill" coaching decision. Kesterson was replaced at shortstop by incoming freshman Holly Speers and transferred to second base. (Linder Dep. 171-172; Oakley Dep. 379.) Kent State had recruited Speers, who was an extraordinary hitter. (Oakley Dep. 378). It was clear that Speers needed to be in the starting lineup. (*Id*. at 378-379). At one point, Kesterson was replaced at second base due to her batting average at the recommendation of Assistant Coaches Bachkora and Oakley. (*Id*. at

98-101, 380, 384, 387-388.) Linder wanted Kesterson to remain in the lineup, but ultimately deferred to the recommendation of her assistant coaches. (*Id.* at 98, 384.) Kesterson also soon returned to the starting lineup at second base due to another player's injury. (*Id*. at 380.)

Finally, Kesterson claims that Linder's comments published in an article about Linder's resignation are an adverse action. Following her resignation, Linder gave an interview to Allen Moff ("Moff") with the Ravenna Record-Courier. (Linder Dep. 264; MSJ Ex. 4.) Linder told Moff that "philosophical differences" prompted her resignation from KSU. (Linder Dep. 265.) Linder's comments were published in Moff's article by the Record-Courier. (MSJ Ex.4.) At the time she made the comments and the article was published, Linder was no longer employed with KSU.

### 3. Kesterson cannot show a causal connection between her protected conduct and the adverse actions.

Assuming she could establish the first two elements of the prima facie case, which she cannot, Kesterson cannot show a causal connection between her sexual misconduct allegation and the adverse actions she claims.  Nothing suggests that any of the actions identified by Kesterson were motivated by her sexual misconduct allegation.  Her transfer from shortstop to second base and brief benching were coaching decisions and the latter was at the recommendation of Assistant Coaches Bachkora and Oakley. (Oakley Dep. 98-101, 380, 384, 387-388.) Even Chloe did not believe the move had anything to do with Kesterson's sexual misconduct allegation. (Chloe Dep. 121.)

With respect to the newspaper article, Kesterson relies on its proximity to her August 24, 2015 Title IX report and her impression that Linder's comments were the result of that report. (Kesterson Dep. 221-222.) However, something more is required than temporal proximity and an impression to show Linder's comments were motivated by Kesterson's August 24 report.

23

Nothing suggests Linder's comments were aimed at Kesterson; she is not named in the article. (MSJ Ex.4.) Further, Linder's comments reflected beliefs she held prior to Kesterson's August 24 Title IX report. (Nielson Dep. 120-121.)[13] Finally, at the end of the 2014-2015 softball season, Linder received critical feedback of her coaching in anonymous evaluations submitted by her players that demonstrate these philosophical differences. (Linder Dep.201-204; MSJ Ex.5.) *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987) (conclusory allegations "'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'")).

### D.    Linder is entitled to qualified immunity.

Even if Kesterson could show that Linder violated § 1983, which she cannot, Kesterson's claims against Linder are barred by qualified immunity. Qualified immunity shields officials performing discretionary functions from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 457 U.S. 335, 341, (1986). Qualified immunity is not a mere defense to liability, but constitutes immunity from suit and an entitlement not to stand trial. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (abrogated on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)). A plaintiff bears the burden of showing a defendant is not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005).

There are two general steps to the qualified immunity analysis: (1) whether the facts that

---

[13] Joel Nielson's deposition excerpts are attached as Linder MSJ Ex.13.

a plaintiff has shown make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court can address these two questions in whichever order it chooses. *Id.* at 236.

For a law to be clearly established, "either 'controlling authority' or 'a robust consensus of cases of persuasive authority' must show that the complained of actions constitute a violation of law." *Hidden Village, LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 529 (6th Cir. 2013) (citing *Ashcroft v. Kidd*, 563 U.S. 731 (2011)). Whether law is clearly established is normally determined with reference to the published decisions of the Supreme Court, the Sixth Circuit, or perhaps, the district court in the district where the conduct occurred. *Ohio Civil Service Employees Ass'n v. Seiter*, 858 F.2d 1171 (6th Cir. 1988). "Although decisions of other courts can clearly establish the law, such decisions must both point unmistakably to the unconstitutionality of the conduct and be so clearly foreshadowed by applicable direct authority as to leave no doubt . . . that [her] conduct was unconstitutional." *Mumford v. Zieba*, 4 F.3d 429, 432-33 (6th Cir. 1993). It is only the extraordinary case that will require a reviewing court to look beyond the Supreme Court and Sixth Circuit decisions. *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993).

The fundamental inquiry is whether public officials are "on notice their conduct is unlawful." *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "[I]n light of pre-existing law, the unlawfulness must be apparent." *Id.* Pre-existing law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)

### 1.  Qualified immunity is available to Linder because the ministerial duty exception does not apply.

Kesterson suggests that qualified immunity is not available to Linder because she was not performing a discretionary function when Linder failed to report Kesterson's sexual misconduct allegation as required by KSU policy. (Doc. 29 at 407.) A duty is ministerial, and outside the context of a discretionary function, "only where the statute or regulation leaves no room for discretion--that is, 'it specifies the precise action that the official must take in each instance.'" *Sellers ex rel. Sellers v. Baer*, 28 F.3d 895, 902 (8th Cir. 1994) (quoting *Davis v. Scherer*, 468 U.S. 183, 196 n.14 (1984)). See also *Hudson v. Hudson*, 475 F.3d 741, 744 (6th Cir. 2007) (citing *Davis* and *Sellers*). The Sixth Circuit has "occasionally acknowledged a distinction between ministerial and discretionary actions, but the cases dealing with this distinction are few and far between, and involve affirmative *acts* taken by officials, rather than alleged *failures* by officials to perform job duties." *Ruiz-Bueno v. Scott*, 639 F. App'x 354, 364 (6th Cir.2016) (citing *Hudson* and *Morrison v. Lipscomb*, 877 F.2d 463, 468 (6th Cir. 1989)).

Linder admits that she *failed* to report Kesterson's sexual misconduct allegation as required by KSU policy. As the Sixth Circuit explained in *Ruiz-Bueno*, Linder's failure to report falls squarely outside application of the distinction between ministerial and discretionary actions. Thus, Linder is entitled to qualified immunity against Kesterson's claims.

Even assuming that the ministerial duty distinction applies to a failure to act, the Sixth Circuit has found that seemingly mandatory statutes can allow for discretion. *Hudson v. Hudson*, 475 F.3d 741, 744 (6th Cir. 2007). In *Hudson*, two police officers were sued in connection with the death of a woman who had a protective order against her killer. *Id.* at 743. Prior to the woman's killing, the officers were aware that the killer had violated the protective order a number of times, but took no action, despite a state law providing that officers "shall" arrest a

26

person who they have reasonable cause to believe violated a protective order. *Id.* Despite the "shall" language, the court reversed the district court's denial of qualified immunity, recognizing that ostensibly mandatory requirements can involve some degree of discretion. *Id*. at 745. Therefore, Linder is entitled to qualified immunity against Kesterson's claims.

As in *Hudson*, Linder's failure to report Kesterson's sexual misconduct allegation qualifies as a discretionary function. KSU's policies requiring the report of instances of sexual misconduct allow for discretion. KSU policy requires employees to report all instances of sexual misconduct to the Title IX coordinator or a deputy coordinator. Ohio Admin. Code 3342-5-16.2(D). This gives employees discretion in choosing to whom they will report – the Title IX coordinator or a deputy coordinator. The report could be made to one of a number of people throughout the university. During the relevant time period, Loretta Shields was KSU's Title IX coordinator. (Barton Dep. 31.)[14]  Erin Barton and Pamela Fitzgerald were deputy coordinators. (*Id*. at 31, 66.) There were other deputy coordinators throughout KSU, including Julie DiBlasio and Kittell (*Id*. at 21, 28, 66; Nielson Dep. 27.)

KSU policy also requires that reports be made "as quickly as possible." Ohio Admin. Code 3342-5-16.2(D)(4). This allows employees the discretion to determine what amount of time satisfies that requirement instead of providing a specific amount of time in which to report sexual misconduct. Finally, KSU policy also gives university departments the discretion to create individual reporting structures to facilitate prompt reporting and adequate response. (*Id*.)  Given the areas of discretion found in KSU's policy for reporting sexual misconduct, Linder's failure to report qualifies as a discretionary function.

Even assuming Linder's failure to report is a ministerial duty, the ministerial duty distinction does not apply in this case because it is not the violation of the alleged ministerial

---

[14] Erin Barton's transcript excerpts are attached as Linder MSJ Ex.9.

duty that gives rise to Kesterson's claim for damages against Linder. See *Sellers*, 28 F.3d at 902 (holding the officers were entitled to qualified immunity even assuming they violated departmentally imposed duties that were purely ministerial because the plaintiffs did not seek damages simply due to violations of departmental regulations, but sought damages based on constitutional violations). Kesterson does not claim she is entitled to damages because of Linder's violations of KSU policy. Instead, Kesterson seeks damages based on her claims that Linder violated the First and Fourteenth Amendments. (Doc. 20 at 243-247.) Thus, the distinction does not apply in this case and, as explained in more detail below, Linder is entitled to qualified immunity against Kesterson's claims.

### 2. Kesterson cannot show a violation of her constitutional rights or that those constitutional rights were clearly established.

Construing the evidence in a light most favorable to Kesterson, Linder is entitled to qualified immunity because Kesterson has not shown a violation of any constitutional rights. *See* Sections IV(A)-(C), *supra.* Additionally, even if Kesterson has shown constitutional violations, Kesterson cannot prove that the constitutional rights were clearly established. Kesterson makes the broad allegations that "[t]he right to be free from gender-based discrimination has been clearly established for decades" and that "[i]t is fundamental that the right to be free of [] retaliation, arbitrary and capricious state action, and disparate treatment with no rational basis is clearly established." (Doc. 20 at 244, ¶307; Doc. 29 at 408.) However, qualified immunity analysis is undertaken not as a broad proposition, but in the specific context of the case. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The narrowness of the "clearly established" inquiry was reiterated by a unanimous Supreme Court in *Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014):

> [A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. . . . [E]xisting precedent must have placed the statutory or constitutional question confronted by

28

the official beyond debate. In addition, we have repeatedly told courts ... not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.

134 S. Ct. at 2023 (internal quotations and citations omitted).

Even assuming Kesterson's "rights" are more distinct, they are not clearly established. The novelty of Kesterson's claims is similar to those in *DeCecco v. University of South Carolina*, 918 F. Supp. 2d 471 (D.S.C. 2013), in which the court rejected the claims on qualified immunity grounds. In *Dececco*, a university soccer player alleged the husband of her head coach made sexual overtures toward her, and that after the coach discovered the plaintiff and husband in a questionable situation, she limited the plaintiff's playing time and reduced her athletic scholarship. The court first found that case precedents did not support imposing § 1983 liability under the Equal Protection Clause for sex discrimination grounded on a "relationship based" motive. *Id.* at 518. But the judge concluded that even if a constitutional right were implicated, "the court cannot find that it was clearly established when DeCecco was a player at USC that her coaches would violate DeCecco's constitutional rights if they treated her adversely due to a coach's jealousy or other relationship-based motive. It follows that the [coaches] would be entitled to qualified immunity even if jealousy (or a similar motive) was found to be sufficient to establish gender-based discrimination or harassment." *Id.* at 518.

Similarly, Kesterson's novel claims do not survive qualified immunity, which Kesterson tacitly seems to acknowledge. For example, discussing *Heike,* she argues "the Sixth Circuit's extensive analysis of the class-of-one claim endorses its *potential viability* in the higher education context *under the right circumstances*, such as those here." (Doc. 29 at 397.) And, in responding to case law that a violation of a university policy does not equate to a constitutional violation, she argues, "though every single violation of university policy does not take on a

constitutional dimension, *certainly some policy violations* also violate the constitution." (Doc. 29 at 399.) However, arguing that case law supports "[p]otential viability…under the right circumstances" and that "some policy violations" have constitutional dimensions is a far cry from the "contours of that right [being] sufficiently clear that a reasonable official would understand that what he is doing violates *that right*." *Goodwin v. City of Painesville,* 781 F.3d 314 (6th Cir. 2015) (emphasis added).

Kesterson cannot show that it is clearly established (1) that a university student can assert deliberate indifference or class-of-one theories of equal protection deprivation for a coach's failure to report an allegation of sexual misconduct or failure to follow a university policy; (2) that suggesting a university student limit discussion of an alleged sexual misconduct to a certain group of individuals constitutes a prior restraint; or (3) that a coach's inconsequential actions or coaching decisions taken after a university student's discussion of sexual misconduct constitutes retaliation. In sum, since Kesterson fails to meet her burden, Linder is entitled to qualified immunity on Kesterson's claims and summary judgment should be granted in Linder's favor.

## IV.    Conclusion

For all of the foregoing reasons and based upon all of the evidence before this Court, Defendant Linder states that her Motion is well taken, there are no genuine issues of material fact as to Plaintiff's claims against Defendant Linder and Defendant Linder is entitled to qualified immunity. Therefore, Defendant is entitled to judgment as a matter of law.

30

Respectfully submitted,

**MICHAEL DEWINE (0009181)**
**Ohio Attorney General**

/s/ *Lisa M. Critser*
ANTHONY J. FARRIS (0055695)
LISA M. CRITSER (0079262)
Assistant Attorneys General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7250/(614) 644-7634 (fax)
anthony.farris@ohioattorneygeneral.gov
lisa.critser@ohioattorneygeneral.gov
*Counsel for Defendant Karen Linder*

## CERTIFICATE OF COMPLIANCE WITH LR 7.1(f)

Lisa M. Critser, as counsel for Defendant Linder in this case, hereby certifies in compliance with Loc. R. 7.1(f) and the Court's non-document Order issued on May 9, 2018, that this case is assigned to the standard track and that the preceding memorandum is not in excess of 30 pages in length.

/s/ *Lisa M. Critser*
LISA M. CRITSER (0079262)
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on May 29, 2018.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's systems.

/s/ *Lisa M. Critser*
LISA M. CRITSER (0079262)
Assistant Attorney General